Jackson
v.
Kniffen.

Jackson, *ex dem.* Coe and others, against Kniffen.

This was an action of ejectment, for land, in *New-burgh*, in the county of *Orange*. The cause was tried at the *Orange* circuit, in *May*, 1805, before Mr. Justice *Thompson*.

The lessors of the plaintiff claimed title to the premises in question, as heirs at law, and by conveyance from the heirs at law, of *David Kniffen*, who died in *January*, 1804. The plaintiff proved title, *prima facie.* The defendant then offered the will of *David Kniffen*, in evidence. It was dated *February* 1, 1801, and executed in presence of three witnessess. The testator gave to his son $3, and to each of his daughters $5, and his grand children $3 each, and to the daughter of *Undrell Merrit*, $125, and directed the legacies to be paid out of his personal estate; and then devised all the remainder of his real and personal estate, (after paying the debts and the legacies) to his wife, the defendant, in fee. The will was then proved by one of the subscribing witnesses. The plaintiff then called several witnesses to prove, that the will was obtained by *duress*. It appeared that the testator was possessed of considerable real and personal estate, in his lifetime; and had advanced to some of his children small sums of money; that the defendant was his second wife, by whom he had no issue; and that they had been married for 20 years before his death. The testator [*]was about 80 years of age, at the time of his decease. During the time, between the 1st *February*, 1804, and his death, he was guarded and watched by his wife, and *Undrill Merrit*, who lived in the house,

Parol evidence of the revocation of a will is inadmsisible. Parol evidence to show that the testator executed a will under *duress*, may be received; but not of the subsequent declarations of the testator himself.

[ *32 ]

NEW-YORK, and his children were debarred from having free access to
Nov. 1806.
him, with a view, as the witnesses supposed, to prevent
Jackson     him altering, or making any other will.    The plaintiff
v.
Kniffen.    then offered to prove, by one of the subscribing witnesses
to the will, and four other persons, that the testator, on
many occasions, in conversation with them, whom he
considered as his friends, since the making of the same
will, had uniformly, and in the most earnest manner, de-
clared that instrument not to be his will ; and that he
had been forced to execute it, for he should have been
murdered, if he had not, and called on these persons to
bear witness to what he declared, and particularly re-
quested the subscribing witnesses not to prove the exe-
cution of the will, which had been kept in the custody
of *Joseph Morey*, one of the executors, ever since its ex-
ecution.    The plaintiff offered to prove further, that the
testator, during his last illness, and within an hour be-
fore his death, while expecting immediate dissolution, in
a solemn manner called on one of the persons then pre-
sent, to bear witness that the said instrument was not
his will, but that it had been extorted from him, through
fear of being murdered, and that his desire was, to
make an equal distribution of his estate, among his chil-
dren ; the testator also then declared, as he had often
done before, that he had requested *Joseph Morey* to re-
turn to him the said instrument, for the purpose of can-
celling it ; but that *Morey* always refused to return it.

The judge overruled this testimony, and the plaintiff
submitted to a nonsuit.

A motion was now made to set aside the nonsuit, and
for a new trial on a case made, in which the above facts
were stated.

The case was submitted to the court without argu-
ment.

THOMPSON, J. This case was submitted to the court
without argument.    It appears, that the right of the re-

spective parties to the premises in question, depends on the validity of the will of *Daniel Kniffen*, under which the defendant claims. The lessors of the plaintiff contend, that the will is void. To establish this, they offered, upon the trial, to prove certain parol declarations, by the testator, after the due execution of his will, some of which were made a few hours before his death, purporting that he had executed his will through fear and compulsion, and that he revoked the same. This testimony was overruled, and the question now presented is, whether it was competent evidence, and ought to have been admitted. The other circumstances given in evidence, tending to show that the testator, when he executed the will in question was under improper restraint might have been submitted to the jury; but on the rejection of the parol declaration of the testator, the plaintiff submitted to a nonsuit. In whatever point of view the testimony offered is considered, I cannot but think that it was properly overruled. It could not, if placed in the strongest possible terms, amount to a revocation, without a direct violation of the statute, which declares that no will (of land) shall be revoked, or altered, except by writing, executed with all the requisites of a will, or by cancelling the same. If these declarations were not to operate as a revocation, I am at a loss to see in what manner they could affect the will. To say that they were proper, in order to show that the instrument in question was not duly executed, by reason of its having been signed under *duress*, is assuming the very point which was to be proved. If they were legal evidence, they must be so, when standing alone, unaided by any of the circumstances previously proved. That the declarations were made a few hours before the death of the testator, can add nothing to their efficacy; for, surely, he could not be considered as standing in the

character of a witness, even admitting the declarations of a witness *in extremis,* to be admissible in any case. This will might have been executed under circumstances which ought to invalidate it; but to allow it to be impeached, by the parol declarations of the testator himself, would, in my judgment, be eluding the statute, and an infringement upon well settled and established principles of law. (1 *Vezey,* 440. 5 *Co.* 69. 2 *P. Wms.* 136.) The only case that has fallen under my observation, which looks like countenancing, in any measure, testimony of this kind, is that of *Nelson* v. *Oldfield,* reported in 3 *Vernon,* 76. We have, however, but a very imperfect statement of the case there given; and the point before the court to be decided, was whether a will of personal estate, which had been *proved in the spiritual court,* could be controverted in the court of chancery. It is true, the reporter observes, that by the depositions of witnesses examined in the cause, the complaints of the testatrix, during her last sickness, respecting the means by which she had been induced to execute her will, were stated; but no objection appears to have been made to the evidence. The defence relied upon, was the conclusiveness of the probate. The admissibility of the testimony not being the point before the court, this cannot, in my opinion, be considered an authority to control the present case. To permit wills to be defeated, or in any manner whatsoever impeached, by the parol declarations of the testator, appears to me repugnant to the very genious and spirit of the statute, and not to be allowed.

My opinion, therefore is, that the motion must be denied.

KENT, Ch. J. declared himself to be of the same opinion.

LIVINGSTON, J. I concur in the opinion just delive-

red; though, on the first reading of this case, my impressions were, that the testator's declarations, made in the moment of expected dissolution, should have been received, to establish[*]the *duress* under which he acted. On more mature reflection, I am satisfied that they were properly rejected. Besides the danger of tampering with a person who may be known to have made his will; of fraud, in making use of some loose and unguarded expression to set it aside; and of perjury, in fabricating declarations which may never have been made, and thus revoking a will by parol, the right of cross-examining is invaluable, and not to be broken in upon. How often is tesmony, which when first delivered, appears conclusive and irrefragable, entirely frittered away by this process? So much so, that a witness well sifted, not unfrequently proves more against, than in favour of, the party that produces him. If one eye-witness be worth more than ten hearsay witnesses,* a still higher value must be set on proofs, made in presence of both parties, compared with *ex parte* declarations. In one way, the whole truth comes out; in the other no more than it may suit the witness, or his friend, to have disclosed. The not being under oath, although a serious objection, is not with me the greatest, because, admitting every thing said to be true, so long as it is in the absence of one, and probably, at the solicitation of the other party, it should go for nothing. In what way the will was extorted, what menaces were used, why he was afraid of being murdered, whether in consequence of threats, or of his own idle suggestions or dreams, why he had not in the course of three years cancelled a will unduly obtained, with many other inquiries which a public examination might have suggested, would have afforded the jury a much fairer chance of arriving at the truth. If the declarations of dying persons are ever to be received, ( on which, if *res integra*, much might be said) it will be best

* Pluris est oculatus testis *unus*,quam auriti *decem*— PLAUT. *Trucu*, 2. 6. 8.

[ *36 ]

to confine them to the cases of great crimes, where frequently the only witness being the party injured, the ends of public justice may otherwise, by his death, be defeated. In civil cases, they should never be admitted; or if admitted at all, not to avoid a will, regularly executed. Credit is not always due to the declaration of a dying person, whose body may have survived the powers [*]of his mind, or whose recollection, if his senses are not impaired, may not be very perfect, or who, for the sake of ease, and to get rid of the importunity and teazing of those around him, may say, or seem to say, whatever they choose to suggest. In the case cited from *Vernon*, if such testimony were received, it passed *sub silentio*, and therefore amounts to nothing. The conclusiveness of the probate appears to have been the only question before the chancellor.

SPENCER, J. The whole case turns upon the legal effect of the proof given at the trial, and offered to be given, that the will was obtained by *duress*.

[Here he stated the evidence offered, and rejected at the trial.]

A will, whether of real or personal estate, cannot be revoked, since the statute of 29 *Charles* II. by words alone. In this view, the parol evidence was inadmissible; but it is essential to the validity of every deed, that the party making it be free from restraints, and not under *duress*.* A will, therefore, may be avoided by *duress*, as well as any other deed.

* Dyer, 143.
6 Powell,
173. and the
cases there
cited.

The only remaining question is, whether evidence should have been received, to prove the declarations of the devisor, and I think it ought. A will takes effect only on the testator's death. During his life, it is subject to his control, and until it was consummated by his death, no one had, in a legal view, any interest in it. *Nemo est heres viventis.* Declarations of facts by a party in interest, when made at a time when no one had a vest-

NEW-YORK,
Nov. 1805

Jackson
v.
Kniffen.

ed interest in opposition to him, are good evidence; and they are very distinguishable from those made by a party in interest, repugnant to the vested rights of others. An obligor in a bond, or a grantor in a deed, cannot make declarations of a *duress*, so as they can be evidence, because they go to take away a vested and opposing interest. This very kind of evidence was admitted, and without a question, in the case of *Nelson* v. *Oldfield*.† There Mrs. *Bettison* was gotten into the power of Mrs. *Nelson*, and was prevailed [*]upon to make her will, and solemnly swear, that she would not revoke or alter it, or make any other will; she declared all these facts, and that she dare not, for fear of damnation, revoke or alter her will. The devisee brought her bill, for the aid of the court of chancery, relative to a *trust estate*, and on the evidence of these declarations alone, the chancellor refused his aid, and dismissed the bill. As well on principle as precedent, I think the evidence offered should have been admitted, and especially, after it was proved, that the devisor had been guarded and watched over, after the date of the will; that it had been taken out of his custody and detained, notwithstanding his application for it, for the purpose of cancelling it, and that his children were denied access to him. I apprehend no danger, under a state of facts like those presented in this case, from admitting such proof; but though I feel myself compelled to dissent from the majority of the court, it is with diffidence. The principles I have adverted to, and the justice of the plaintiff's case, have operated to produce a conviction on my mind, that the nonsuit ought to be set aside.

TOMPKINS, J. was of the same opinion.

Rule refused.

† *Vernon,* 76.

[ * 37 ]