## Case No. 13,046.

### SMITH v. FENNER.

[1 Gall. 170.] [1]

Circuit Court, D. Rhode Island. June Term, 1812.

WILLS—FRAUD IN OBTAINING—DECLARATIONS OF TESTATOR—RES GESTÆ—INTENTION TO CHANGE —ALTERATIONS—HANDWRITING.

1. The declarations of the testator before and at the time of making a will, and afterwards, if so near as to be a part of the res gestæ, are admissible to show fraud in obtaining the will. But not declarations at any distance of time after the will has been executed, especially where the will has always been in the testator's possession.

[Cited in Comstock v. Hadlyme, 8 Conn. 264. Distinguished in Dinges v. Branson, 14 W. Va. 114. Cited in brief in Gibson v. Gibson, 24 Mo. 228. Cited in Herster v. Herster. 122 Pa. St. 256, 16 Atl. 346; Kenyon v. Ashbridge. 35 Pa. St. 159; Runkle v. Gates, 11 Ind. 98.]
[See Richards v. Dutch, 8 Mass. 507.]

2. The declarations of the testator as to his intention to alter his will. and being prevailed upon not to do so, are not admissible to show that the will was fraudulently prevented from being revoked. even supposing that under the statute of wills, such fraudulent prevention of a revocation would avoid a will. there being no act or attempt shown to revoke the will, &c. which act or attempt was fraudulently prevented.

[Cited in Robinson v. Hutchinson, 26 Vt. 45; Waterman v. Whitney, 11 N. Y. 163, 168.]

3. An alteration of a pecuniary legacy in the will. by the legatee or a stranger. does not avoid the will as to other bequests. Quære, whether it does as to any bequests.

[Cited in Doane v. Hadlock. 42 Me. 76. Cited in brief in McIntire v. McIntire, 19 D. C. 485.]

4. Where a question arises, whether an alteration in a will were made by the original draughtsman or by a stranger. evidence of other writings proved by witnesses. and also of witnesses, is admissible to show that the peculiarities in the alteration are such, as the party frequently used in his ordinary and genu-

ine handwriting. Vide 3 Cas. Ch. 61, 94; 1 Greenl. Ev. (2d Ed.) § 581, and authorities there cited in note 2.
[Cited in Myers v. Toscan, 3 N. H. 48.]

This was a real action, to recover an undivided seventh part of certain parcels of land, described in the declaration. The title of the plaintiff [Freelove Smith] was derived from Arthur Fenner, senior, who was her father, and grandfather of the defendant, and who died on the 28th Jan., 1788. The defendant claimed the property by title by descent from his father, the late Governor Arthur Fenner, who claimed it by a devise from his father, the said Arthur Fenner, senior, under a will of the testator made in March, 1781, and proved 4th Feb., 1788.

Mr. Bridgham and Tristram Burgess, for plaintiff.
S. Dexter and Mr. Howell, for defendant.

The will was attempted to be impeached, 1st, as having been originally procured by fraud, circumvention and imposition. 2d. As having been fraudulently kept in force, whereas the testator wished to revoke it, but was fraudulently prevented. 3dly. Because the will was, after the testator's death, and before probate, altered by the devisee, Arthur Fenner, in a pecuniary legacy to one of his daughters, by inserting "seventeen" in lieu of "six hundred"—and the will thereby became void.

It was alleged on the one side, and denied on the other, that by the law of Rhode-Island, a probate of a will was conclusive, as well to real as personal estate. But on the counsel for the defendant's expressing a willingness to go into the evidence, and intimating that they should reserve the question ultimately for the consideration of the court, if the case should require it, the evidence was admitted to go to the jury.

To prove the first point, the plaintiff offered to prove by witnesses, the declarations of the testator to that effect, made before and at the time of the making of the will, and immediately afterwards; and the counsel then offered to prove declarations of the testator to the same effect, made afterwards at several times during the space of the seven last years of his life, and cited Swinb. Wills, pt. 7, c. 18, p. 540 (folio.)

The counsel for the defendant objected to the admission of the subsequent declarations of the testator, made so long after the execution of the will, that they could not be considered as a part of the res gestæ.

BY THE COURT. The declarations of the testator, made before and at the execution of the will, are admissible in evidence, to prove the point. And so declarations made after the execution of the will, if so near the time of the execution, as to be considered a part of the res gestæ or necessarily connected with it. See Richards v. Dutch, 8 Mass. 507. But I shall not admit any other subsequent declarations of the testator, because

---

[1] [Reported by John Gallison, Esq.]

such declarations are of the nature of hearsay, and have never been held admissible in any case, which is within my recollection. The nature of such evidence is exceedingly suspicious; of very easy fabrication, and yet of very difficult refutation. And the evidence ought not to be allowed one jot beyond what the authorities have already decided. Especially in the present case, the evidence is inadmissible, inasmuch as the testator lived in the full possession of his mind for many years after the execution of the will, and it is in proof, that it had remained completely in his own possession during all that time, and was found in his possession at his death. If fraud or imposition have been practised, it is competent for the plaintiff to prove it aliunde, but it will be too much to depend upon the light sayings of testators, made long after the deliberate execution of their wills, to set aside the force of their solemn and written declarations.

On the second point, the plaintiff's counsel offered to prove by the testator's declarations after the execution of the will, that he intended to give to his son John, by deed, a farm, which was devised to his son Arthur in the will, and that he intended to add codicils to his will, and to give further legacies to his daughters; and that he intended to have had his estate appraised in order to a more equal distribution among his family, and that his son Arthur had induced and prevailed upon him not so to do. But the plaintiff's counsel admitted, they had no evidence to show, that the testator ever attempted by any act to revoke his will, or to make a codicil, or to give a deed, and was actually prevented, by fraud, violence, or circumvention, and they cited in favor of the admission of this evidence, Swinb. Wills, pt. 7, c. 3, p. 476. Esp. Dig. 47.

This evidence was objected to by the counsel for the defendant, as contravening the express provisions of the statute of wills of Rhode Island, which as to revocations is the same in substance as the statute of frauds, 29 Car. II., c. 3.

STORY, Circuit Justice. The evidence is inadmissible. The mere declaration of the testator, as to his intentions to do or not to do any particular act, or to make any alterations in his will, is not of itself evidence to revoke or destroy it. Even supposing that under the statute of wills, the fraudulent suppression or prevention of a revocation, is equivalent in point of law to an actual revocation (see 1 Fonbl. Eq. 199, London Ed. 1799, cites 5 Vin. 521, pl. 31; Vane v. Fletcher, 1 P. Wms. 352), still it must be proved, not by mere declarations, but by acts done or attempted to be done, and suppressed by fraud, violence, circumvention or threats. No such proof is offered, and mere naked declarations cannot be permitted to control or annul solemn instruments. It is exceedingly doubtful, whether even evidence to the latter effect be admissible, since the statute of frauds; but if offered in this case, I will de bene esse admit it; but nothing ought, from such admission, to sanction its validity; it is rather admitted, because other circumstances in the case lead to great question, whether it can consist with the proof already before the court, of the will always having been in the control of the testator. As the exception has been taken to the declarations of the testator, it must prevail; but it will be difficult, if admitted, to give effect to such declarations, when there is positive proof that the testator always had the means, if he had the disposition, to revoke the will.

As to the third point, it was apparent that the word "seventeen" was written on an erasure in the will, and the principal controversy before the jury was, as to the time when made, whether before or after its execution.

But it was contended by the plaintiff's counsel, that an erasure by a devisee, or even by a stranger, in a will, after execution, avoided it in the whole; and at all events, when done by a devisee, it avoided all bequests in the will to him. And they cited Pigot's Case, 11 Coke, 27, and Master v. Miller, 4 Term R. 320.

The counsel for the defendant, in reply, argued that such erasure had no operation on the will, except as to the altered legacy. If the alteration was made, and the original legacy was known, it should, on the probate, be restored, otherwise the probate would be conclusive. 4 Burn, Ecc. Law, 49, who cites 1 P. Wms. 388; 2 Vern. 8, 17. If the original legacy could not be known, or perhaps if altered by the legatee himself, it might be void as to that particular legacy, but it would stand well as to the residue of the will: and they cited Hyde v. Hyde, 1 Eq. Abr. 405; 13 Vin. "Fait." (P.) 38, 41; Shep. Touch. 55. They further urged, that the presumption of law was, that the erasure was made before the execution of the will, unless the contrary appeared. Shep. Touch. 55; 13 Ven. "Fait," 41.

STORY, Circuit Justice. Supposing, that in Rhode Island, the probate of a will is not conclusive [2] (on which I give no opinion) an erasure or alteration in it after execution does not avoid the will in toto. If the interlineation, &c. be made by a stranger, and the original legacy be known, it will have no legal effect, and the legacy will be still recoverable, and ought to be proved as it originally stood. If made by the legatee himself, at most in odium spoliatoris it will only avoid the legacy so altered, but it cannot destroy other bequests in the will, either to the legatee himself or to others. This is not like the case of a contract, where the alteration of a security by the obligee himself avoids it. The legatees all take by the boun-

[2] See Tompkins v. Tompkins [Case No. 14,091], where this point is expressly decided. See the authorities collected in this case by counsel and court. See where the plaintiff's counsel cite Smith v. Fenner, and remark upon it.

ty of the testator; the object is to carry his will into effect, and not merely to attend to the merits or demerits of those who claim under it. If any alteration in a will would avoid it, the executor before probate might, by such alteration, destroy the rights of all third persons, which would be in the highest degree unreasonable. See Haines v. Haines, 2 Vern. 441; Parker v. Ash, 1 Vern. 256.

In the course of the trial, the plaintiff's counsel offered witnesses acquainted with the hand-writing of the scribe, who drafted the will, to prove that the altered word was not in his hand-writing, and the witnesses mainly relied on the manner of forming the letter "t," and the use of double hyphens. To rebut this evidence, the defendant offered witnesses, who were well acquainted also with, and swore to the scribe's hand-writing, and who swore that certain deeds, &c. then in their possession, which they produced to the jury, were the hand-writing of the scribe, and contained the peculiarity as to the "t," and the hyphens observable in the will, and that they had frequently known the scribe to write in this manner.

The plaintiff's counsel objected to the production of these deeds to the jury, because it was a mere comparison of handwriting.

THE COURT overruled the objection. Nothing is clearer than that this is not a mere comparison of hands. The witnesses swear as to facts and peculiarities of hand-writing, and produce the best possible proof of their own accuracy. The evidence goes completely to rebut the testimony on the other side; and it rests on the same basis as the admission of witnesses to prove hand-writing in ordinary cases. See 1 Greenl. Ev. § 576–579, where the cases are collected and commented on.

A great deal of evidence was offered in the course of the trial in favor of the will.

The jury, without difficulty, found a verdict for the defendant, and also found the fact specially that the erasure in the will was made before the execution of it by the testator. At the trial, the counsel for the plaintiff stated an intention to offer a bill of exceptions to the opinions of the court; but afterwards, on inquiry from the court, they declined to proceed further. Vide 6 Term R. 671; 8 Term R. 147.