The opinion of the Court was delivered by
Tilghman C. J. —
This is an ejectment brought by Mary Smith against Wm. B. Irish. The plaintiff and defendant *575 are children of captain Nathaniel Irish, deceased, and both claim under their father’s will. But the question is,' what was his will. Different writings ¡;re set up. The plaintiff claims under a writing, dated the 21st of July, 1813 ; the defendant, under one, dated the 7th of November, 1814. The will of 1814 was proved and recorded in the Register’s office on the 24th of September, 1816, soon after the death of the testator. That of 1813 was never offered for probate. On the trial of,the cause in the Court below, various exceptions were taken, by the- defendant’s counsel, to the opinion of the Court, both on points of evidence and in the charge to the jury, all of which are now to be reviewed.
1. The first exception was to the admission of 3Iary Irish, the widow of Nathaniel Irish, as' a witness for the'plaintiff, who offered her for. the purpose of proving that the testator, at the time of executing the will of 1814, was' not of sound and disposing mind and memory. She was objected to, on the- ground of interest, having, it was said, a greater interest in the will of 1813, than that of 1814. At the time the witness was offered, the will of 1813 had not been read, so that it could hot appear what interest she took under it. Clearly, therefore, the objection of interest was not good at that period. But the will of 1813 being-afterwards read, in-the course of the trial, the exception was renewed, ahd. the Court was requested to charge the jury, that they -were to pay no regard to the ‘testimony of Mrs. Irish. The President of the Court, in his charge to the jury, adverted to this exception, and observed, that it by no means appeared that Mrs. Irish was interested. On the contrary, she had brought an action of dower in her husband’s land, from' which it would seem, that she did not claim under his will. But whether she did or not, it does not appear to us, whether she would have taken a greater interest under one will of the other, or whether it would have been more for her interest that her husband should- have died intestate. We have not sufficient data, to decide on which side her interest lay ; and therefore we cannot say that there was error in rejecting her. Before we could come to that decision, we mast be satisfied, that it was her interest to destroy the will of 1814.
2. The second exception was to the matter of Mrs. Irish’s evidence. It was proposed to prove by her, that in conse» *576 quence of a paralytic stroke, some time before the making of the will of 1814, the testator’s intellects were much impaired, and continued so Until the time of the execution of that will, and afterwards. It was contended, that the evidence should be confined to' the time of the execution of 4he will. There is no doubt, that the validity of a will, depends on the state of intellect at the time of its execution. But how is that to be ascertained ? Great regard is to be paid to the subscribing witnesses, and to the testimony of others who might happen to be present at the time of execution. But to exclude all other testimony, would be altogether unreasonable» If no witnesses are admitted, but those present at the execution, and they are base enough to perjure themselves, it will be impossible to set aside a will made by a man of unsound mind. But besides, soundness of'mind being .but matter of opinion, the subscribing witnesses may be mistaken, though they are men of integrity. If others óf .equal integrity and understanding, had seen the testator an hour before, and an hour after the execution of the will, and were of opinion, that he was non compos, in consequence of a disorder not generally subject to intermissions, and Supported this opinion, by relating the words and actions of the testator which induced them to think him; of unsound mind, it would surely be proper,'that the-jury should hear those witnesses, in order to form a judgment of their ownj as to the state of mind at the moment of execution. So, as to the evidence offered in this case. If it were clearly proved, that a considerable time before the making of this will, the testator, in consequence of á paralytic affection, was so disordered in his' intellects, as to be incapable of transacting any kind of business, and so continued until after the execution of the will, it would surely afford- a strong probability, that he was incapable of.devising, at the time of execution. To exclude such evidence,-would be to shut out the light of truth, and compel the júry-to rest their faith on the subscribing witnesses, in a matter which admitted, and1 even called for, other testimdny. I am of opinion, therefore, that the evidence was rightly received.
3. The counsel for the defendant, on the cross examination of Mrs. Irish, offered to ask her, “whether she had not accepted of a devise under the will of 1814.” This question ■ *577 was objected to by the counsel for the plaintiff, as irrelevant, and the Court would not permit it to be put. .
The question had no relation to the sanity of the testator. but still it might be proper to ask it. The witness had given evidence of several facts within her own knowledge, shewing the weakness of the testator’s intellects, and indeed, her whole evidence tended to that point. It was material, therefore, for' the defendant, on whom her evidence had borne very hard, to show, from her, own mouth, that her words and actions were at variance. Her acceptance of a devise, was some evidence of her opinion, that the testator was of sound mind. Supposing her to be a woman of integrity, she Ought not to have accepted any thing under a will which she thought her husband- incapable of making. But if she really thought’ him capable, her testimony would have less weight with the jury. It appears to' me, that her answer to the question proposed, might have an effect on her credibility, and therefore the defendant was entitled to it. I am of opinion, therefore, that ,in the rejection of this question, there was error.
4. The Court admitted Mrs. MlCullough, a daughter of the testator, to be sworn as a witness for the plaintiff, although it was objected by the defendant, that she was interested in the destruction of the will of 1814, because she would have gained more by the will of 1813, or even by intestacy. This is precisely the objection which was made to Mrs. Irish, and must receive the same answer. The fact of her gaining more in one way than another, does not appear to this Court. It was neither proved in the Court below, nor admitted. .There was no error, therefore,-in admitting her as a witness. It will be understood, however, that I give no opinion, whether Mrs. Irish and Nits.' McCullough would have been competent, in case their interest had been established by satisfactory evidence.
5. The defendant’s counsel offered in evidence sundry entries in the hand writing of the testator, in his books of account, in order to shew that he was capable of transacting business. The evidence was rejected by the Court, not because it was improper in itself^ but because it was offered at an improper time, viz. during the examination of one "of the plaintiff’s witnesses^ which would be interrupted by it. But *578 the counsel was told, that at a proper time the evidence might be given. Undoubtedly this was right. The Court is to take care that the trial be conducted with order and regularity ; and it would manifestly tend to disorder, if witnesses were to be interrupted in their evidence, by the introduction of contradictory evidence on the other side.
6. The Court permitted the plaintiff’s counsel to ask Jane Hancock, one of the witnesses, “ whether she knew, whether or not the eye sight of the testator was good enough to have enabled him to recognise her, when near to her, if his mind bad been right?” There was nothing improper in this question. If the testator did not know the witness, and this was not owing to a defect in the organ of vision, it would have been strong tvidence of imbecility of mind.
7. The Court permitted the following testimony to be given by Bayle Irwin, though objected’to by the defendant’s counsel: “ 1 visited him (the testator.) He would look at me with a vacant stare. After speaking with him, and telling him who I was, he would answer. His countenance and appearance indicated childishness.” I think the evidence was very proper. The countenance gives strong indications of the state of the mind. What the countenance is, is matter of fact, depending, to be sure, in some measure, on opinion. All men would not form the same opinion of the same countenance. One might think it indicated childishness; another not. . But that is no reason the evidence should be excluded. The jury, in such cases, must depend something on the intelligence displayed by the witnesses, in the course of their examination. Physicians are not the only persons capable of judging of the countenance. A simple idiot, no man could mistake ; nor would there be much .difficulty in perceiving very great weakness of intellect, short of pure idiocy.
8. The following evidence of Thomas Leg git ^ was excepted to by the defendant’s counsel, but admitted by the Court: “Mrs. Irish observed, in the presence of her husband, sitting at the table, that captain Irish did not attend to business, that he was incapable, — he said nothing.” It is to be remarked, that this witness came to the testator’s house, to pay his rent, and paid it, not to the testator, but his son, the defendant; and this conversation happened at the supper table.
*579 The evidence was proper. It is not to be supposed, that Mrs. Irish would have said a thing of this kind to her husband’s face, unless she had thought him incapable of busi- ' ness; and his making no answer, was some evidence of incapacity. The jury would give it what weight it deserved. There might be reasons, to be sure, which might induce the testator to be silent, though he were very capable of contradicting what had been said. A man may not like to enter into an altercation with his wife, in presence of a stranger. But it was a circumstance proper to be laid before the jury ; and if corroborated by other circumstances, might not be unimportant.
9. Mr. Wilkins, counsel for the plaintiff, having given evidence to impeach the will of 1814, and having read in evidence the will of 1813, offered in evidence a cancelled will, in the hand writing of the testator, dated the 5th of Novem- , her, 1810, for the purpose of shewing, that when the testator was indisputably of sound mind, his intentions were, to dispose of his estate among his family in the same manner as he did by the will of 1813 ; and also for the purpose of shewing, that when the testator meant to cancel a will, he struck out his name from the front of it, a circumstance which was omitted in the will of 1813. The paper offered in evidence, was admitted to be in the hand writing of the testator, and found among his papers. This evidence was excepted to by the defendant, but admitted by the Court. I cannot see any good reasons for excepting to this evidence. The will of 1814 was impeached on two grounds: 1. For the incapacity of the testator. 2. Because it was obtained by fraud and improper management. In both points of view, it was proper for the jury to be informed what had been the testator’s, intentions, when his understanding was unquestionable, and when he was unassailed by family intrigue. If he afterwards made a different disposition, when weakened by disease, without some reason to be shewn by the defendant, it was a circumstance which, combined with others, might not be unworthy of attention. It might not be of much weight by itself; and it admitted of explanation ; but it certainly went for something. It is from a collection of small circumstances that a mass of weighty evidence is often produced. On the trial of the will of the late Judge William Bradford, be *580 fore me, at. Nisi Prius, at Philadelphia, which was much contested by very able counsel, it was thought material to shew his intention, at different periods, with respect to the disposition of his property. The evidence was admitted, and I have never heard the propriety of the admission questioned. I have no doubt, that in the case before us, the Court decided correctly.
Having gone through all the exceptions on points of evidence, I will how consider those to the charge, which are six in number.
1. The Court was requested to charge, “ that in case of a revocable instrument, such as a will, having been obtained by fraud, Chancery will not interfere, except under particular circumstances.” The Court charged, “ that in such case, Chancery would not grant relief, where the party from whom, the instrument was obtained, had a fair opportunity of revoking it j but that relief would be granted, where there had not been a fair opportunity of exercising the power of revocation.” This charge was correct. "Where, a man retains a revocable instrument, with full opportunity of revoking it, -and does not revoke it, there is a strong presumption, that he wishes it to stand, though at first it might have been unfairly obtained from him. But there is no such presumption, where, soon after the execution of the instrument, he is taken ill and dies; or where, from the ,time of execution to his death, his intellects were too weak to judge of the propriety of revocation. It was'for the jury to decide whether captain Irish was in such a state of mind," as enabled him to judge of the expediency of cftneeiling the, will of 1814, supposing it co have been obtained from him by fraud or undue influence.
2; The Court’s opinion was requested, “ whether the jury coüld infer the testator’s incapacity, at the time of .executing his will, from facts anterior to the will.” The answer of the Court was,' thatthe plaintiff must fail in her action, “ unless she brought down the proof of incapacity to the precise time of making the willP This was not exactly an answer to the question proposed. The Court,might have gone further, and said, that the jury might infer incapacity from anterior facts. It is very clear, that such strong proof may be exhibited of mental derangement of a permanent nature, a short time be *581 fore and after the execution of the will, as would leave the jury in no doubt of derangement at the moment of execution. In cases of this kind, a good deal would depend on the character of the subscribing witnesses, both for intelligence and integrity. If they were defective in either, their evidence would not have much weight. We have known instances, where they have been parties to the fraud, and been guilty of perjury. Such was the case of Law v. Jolliffe. And even when the subscribing witnesses are men of integrity and good understanding,, being often called on a sudden, to .sign their names, and having little intercourse with the testator, they have much less opportunity of knowing the state of his intellects, than his physicians and friends, who have been in habits of intimacy, and had constant access to him.
3. The Court was requested to charge the jury, “whether or not they could legally infer capacity to make a will, during the time the testator made the entries in the books, which had been given in evidence.” The Court charged, “ that the entries in the books were a circumstance in favour of sanity of mind:, but not conclusive.’’7 'Undoubtedly, they were not conclusive. Nor was it for, the Court to say, what weight, they carried. Whether the entries were properly made, of what nature they were, and what degree of intellect it required to make them, were matters for the consideration of the jury. And if they were of opinion that they were-not sufficient to outweigh the other evidence, shewing the testator’s incapacity, it was not within the province of the Court to control them.
4. The Court was required to instruct the jury, “ whether any facts had been given in evidence, from which a legal presumption of such fraud could be raised, as was sufficient, to invalidate the will of 1814.” The Court charged, “that it .was not,for them to say, whether the evidence was'sufficient to satisfy the jury that the will was obtained by fraud.” The charge was right. ■ The Court could not say, what facts had been sufficiently proved. When a case comes before the Court, in which the facts are stated, fraud may be matter of law. But while it is before the jury, it cannot appear to the Court what the facts are ;and the most they can do, is, to instruct the jury what the law would be, in case the jury should be of opinion that certain facts were well proved»
*582 5. The opinion of the Court was asked, “ whether, where there is no evidence of infirmity of mi;nd at the time of the execution of the will, and the. subscribing witnesses are uncontradicted, infirmity can be inferred.” The question was answered' in the affirmative, and very properly, for reasons which I have already given. It was an abstract question, however, which the Court was not bound to answer. It did not apply to the matter in issue, because a great deal of evidence had been given, in contradiction to the subscribing witnesses, by direct implication. For, where those witnesses swear to their belief of the testator’s sanity at the time of executing the will, and, others swear to facts at a different period, which have a strong bearing on the sanity at the time of execution, the subscribing witnesses are, in fact, contradicted. 1 ' ' ' ’ .
6. The last question proposed .to the Court, was, “ whether an inference of infirmity can be drawn, from a witness saying, that answers were given by the testator to a question or questions proposed to him, without stating the questions and'answers.’ The Court was opinion, '■'■ that facts, and not conclusions from facts, must be testifiedby which, I suppose, they meant, that the inference of infirmity could not be drawn, unless the questions and answers were disclosed to the jury, from, which they might be enabled to judge for1 themselves. This opinion was favourable to the defendant, and therefore he cannot complain of .it. I have now gone through the whole assignment of errors, and am of opinion that there is no error’in the record, except in the rejection of the question proposed by the defendant’s counsel to Mrs» Irish ^ — whether she had not accepted of a devise under the will of 1814 ? That was an error, and therefore the judgment must be reversed, and a venire facias de novo awarded.
, Judgment reversed, and a venire facias de novo awarded.