*152
 
 Selden, J.
 

 The principal question presented by the bill of exceptions in this case is, as to the admissibility of the declarations of the testator made
 
 after
 
 the execution of the will.
 

 The subject to which this question belongs is of very considerable interest, and one upon which the decisions are to some extent in conflict. Much of the difficulty, however, has arisen from the omission to distinguish with sufficient clearness, between the different objects for which the declarations of testators may be offered in evidence, in cases involving the validity of their wills. It will tend to elucidate the subject to consider it, under the following classification of the purposes for which the evidence may be offered, viz: 1. To show a revocation of a will admitted to have been once valid. 2. To impeach the validity of a will for duress, or on account of some fraud or imposition practiced upon the testator, or for some other cause not involving his mental condition. 3. To show the mental incapacity of the testator, or that the will was procured by undue influence. The rules by which the admissibility of the evidence is governed, naturally arrange themselves in accordance with this classification. They have, however, been considered in most of the cases without regard to it; and hence much of the apparent conflict among them will disappear, when the proper distinctions are taken.
 

 To show the state of the authorities, therefore, and what the differences really are between them, it is necessary to arrange the cases according to this arrangement of the objects for which the evidence is given. In referring, however, to those belonging to the first of these divisions, it is proper to premise, that the revocation of a valid will, is a matter which not only in England, but in this state, and in most if not all the other states, is regulated by statute: and these statutes are substantially the same; those in this country being for the most part taken from the English statute of frauds. Most if not all these statutes require either a written revocation executed with the same formalities as the will itself, or some act
 
 *153
 
 amounting to a virtual destruction of the will, such as burning, tearing, obliterating, &e. accompanied by an unequivocal intention to revoke it. Mere words will in no case amount to a revocation.
 

 Under these statutes, therefore, the only possible purpose for which evidence of the declarations of the testator can be given, upon a question of revocation, is to establish the
 
 animo revocandi,
 
 in other words, to show the intent with which the act relied upon as a revocation was done. The cases on this subject are in the main in harmony with each other, and in general entirely accord with the view here presented. I will refer to a few of the most prominent.
 
 Bibb
 
 v.
 
 Thomas,
 
 (2
 
 W. Black.
 
 1044,) was a case of revocation by throwing the will on the fire. The will was not consumed, but fell off the fire, and was taken up and saved by a bystander without the knowledge of the testator. The court held the revocation complete. The case was held to depend upon the intent with which the will was thrown upon the fire; and to establish this intent, the declarations of the testator, both at the time of the transaction and
 
 afterwards
 
 were received. So far as regards the declar
 
 a
 
 tions which accompanied the act, this was in accordance with general principles, and with all the other cases: but I apprehend that the declarations of the testator made after the transaction was over, could not in such a case be properly received. This distinction however was not taken, and the question did not arise.
 
 Doe
 
 v.
 
 Perkes and others,
 
 (3
 
 Barn. & Ald.
 
 489,) was a similar case, in which the declarations of the testator showed that he had abandoned the intention to destroy the will, before the work of destruction was complete. Ho declarations were proved in this case except those which ' were clearly a part of the
 
 res gestæ.
 
 In the case of
 
 Dan
 
 v.
 
 Brown,
 
 (4
 
 Cowen,
 
 483,) it was insisted by the counsel that upon a question of revocation the declarations of the testator made either before or
 
 after
 
 the act relied upon, were admissible, as well as those which accompanied the act itself: but the court held, that decla
 
 *154
 
 rations accompanying the act, such as were a part of the
 
 res
 
 gestae, were admissible for the purpose of showing the
 
 quo animo;
 
 but that no others could be received. In
 
 Jackson
 
 v.
 
 Betts,
 
 (6
 
 Cowen,
 
 377,) the main question was, whether a will proved to have been once properly executed, but which could not be found after the death of the testator, had been canceled .or destroyed and thus revoked, or whether it continued in force: and evidence was offered of the declarations of the testator, during his last sickness, as to the existence of his will, and the place where it would be found. The supreme court held the evidence not admissible. The case ultimately went to the court of errors, and the chancellor there expressed doubts as to the correctness of the decision of the supreme court upon the point, but did not overrule it.
 
 (See
 
 6
 
 Wend.
 
 173.)
 

 I consider these cases as establishing the doctrine that upon a question of revocation, no declarations of the testator are admissible except such as accompany the act by which the will is revoked; such declarations being received as a part of the
 
 res
 
 gestae, and for the purpose of showing the intent of the act.
 

 The only direct decision to the contrary which has fallen under my observation is the case of
 
 Durant
 
 v. Ashmon, (2
 
 Rich. S. Car. R.
 
 184.) This case however is in conflict with authority as well as with principle. The fact to be proved in such cases is, the act claimed as a revocation, together with the intent with which it was done; and all declarations of the testator which do not accompany the act, are to be regarded as mere hearsay, and should be treated as such.
 

 In regard to the second class of cases, viz. where the validity of a will is disputed on the ground of fraud, duress, mistake or some similar cause, aside from the mental weakness of the testator, I think it equally clear that no declarations of the testator himself can be received in evidence except such as were made at the time of the execution of the will, and are strictly a part of the
 
 res gestae. Jackson
 
 v.
 
 Kniffen,
 
 (2
 
 John.
 
 31,) is a leading case on this subject. In that case the plaintiff claimed
 
 *155
 
 as heir at law; the defendant under the will of David Kniffen. The plaintiff gave evidence tending strongly to show, that the will was obtained by duress, and offered to follow this up by proof of the testator’s declarations, some of them made
 
 in extremis,
 
 that the will had been extorted from him by threats and duress. The court held the evidence inadmissible. Thompson, J. says: “ This will might have been executed under circumstances which ought to invalidate it, but to allow it to be impeached, by the parol declarations of the testator himself would in my judgment be eluding the statute, and an infringement upon well settled and established principles of law.” In
 
 Smith
 
 v.
 
 Fenner,
 
 (1
 
 Gallison,
 
 170,) one of the questions-was, whether the will of Arthur Fenner had been obtained by fraud and imposition, and the plaintiffs offered to prove declarations of the testator to that effect, made before and at the time of making the will and
 
 immediately
 
 afterwards. He also offered to prove similar declarations made afterwards at different times during the last years of his life. The court held that the declarations made
 
 before,
 
 as well as at or so near the time as to be a part of the
 
 res gestee
 
 were admissible,
 
 but not those made
 
 after-wards. So far as this case seems to justify the reception of declarations made
 
 before
 
 the execution of the will to prove fraud or duress, I think it inconsistent with principle, as well as opposed to the best considered of the modern cases. In other respects it is in accordance with both. In the case of
 
 Stevens
 
 v.
 
 Vancleve,
 
 (4
 
 Wash. C. C. R.
 
 262,) it was made a question, whether a will had been duly executed: and as bearing upon that question, the defendants’ counsel offered to prove that the uniform declarations of the testator in favor of the defendant who was the devisee, had been consistent with the disposition made by the will, from the year 1820 to the execution of the will in 1817. The evidence was rejected. ' Washington, J. said,
 
 “
 
 The declarations of a party to a deed or will, whether
 
 prior
 
 or
 
 subsequent
 
 to its execution, are nothing more than hearsay evidence, and nothing could be more danger
 
 *156
 
 ous than the admission of it, either to control the construction of the instrument, or to support or destroy its validity. In
 
 Moritz
 
 v. Brough, (16
 
 Serg. &
 
 Rawle, 403,) the supreme. court of Pennsylvania held the declarations of the testator, whether made before or after the execution of the will, inadmissible for the purpose of proving fraud or coercion, although it is there conceded that for the purpose of showing the mental imbecility of the testator such evidence might be received. It was also unanimously decided by the court of errors of Connecticut, in the case of
 
 Comstock
 
 v. Hadlyme, (8
 
 Conn.
 
 254,) that the declarations of the testator, unless a part of the
 
 res
 
 gestae, were V not admissible for any purpose except to prove his
 
 mental condition
 
 at the time of executing the will. The same doctrine is held by the English courts. In
 
 Provis
 
 v. Reed, (5
 
 Bing.
 
 435,) it was sought to impeach the validity of the will by proving the declarations of the testator made after its execution. The evidence was rejected. Best, Ch. J. said, “It has been insisted that declarations of the testator were admissible in evidence, to show that the will he had executed was not valid: but no case has been cited in support of such a position, and we shall not for the first time establish a doctrine, which would render useless the precaution of mating a will.” These cases must, I think, be sufficient to establish the position, that declarations of a testator, made either
 
 before or after
 
 the execution of the will, are not competent evidence to impeach its validity, on the ground of fraud, duress, imposition or other like cause. In one of
 
 Cowen Hill’s Notes to Phillipps on Evidence, (see note
 
 481,
 
 p.
 
 257,) it seems to be insisted that the declarations of a devisor are admissible against the devisee, upon the same principle with those of an ancestor against the heir, or of a grantor against his grantee. Perhaps they may be, where the declaration is in regard to the estate: but where _it has reference to the validity of the will, the case is'entirely different. Declarations of an ancestor grantor, &c. are admitted, because they are against the interest of the . party making them, and might when made have been .used
 
 *157
 
 against him. But these reasons do not apply at all to the declarations of a testator in regard to his will. He has no
 
 inter-
 
 \
 
 est
 
 in the matter, and the declaration could never under any circumstances be used against him personally. The distinction is obvious and material. There are one or two cases in the reports of the state of North Carolina, which might seem to hold a contrary doctrine to that here advanced, viz :
 
 Reel
 
 v.
 
 Reel,
 
 (1
 
 Hawks, 248,)
 
 and
 
 Howell
 
 v.
 
 Barden,
 
 (3
 
 Dev.
 
 462.) But the
 
 decision
 
 in the first of these cases is entirely reconcilable with the view here taken, although
 
 all
 
 that is said by the court may not be.
 

 I have referred thus particularly to these numerous cases, in which the declarations of testators have been held
 
 inadmissible
 
 upon contests respecting the validity of their wills, for the purpose of showing that they all apply to one or the other of the first two of the three classes into which I have divided the cases on the subject. None of them have any application to cases in which the will is assailed on account of the insanity, or mental incapacity of the testator at the time the will was executed, or on the ground that the will was obtained by undue influence.
 

 The difference is certainly very obvious between receiving the declarations of a testator, to prove a distinct external fact, such as duress or fraud for instance, and as evidence merely of the mental condition of the testator. In the former case, it is mere hearsay, and liable to all the objections to which the mere declarations of third persons are subject; while in the latter it is the most direct and appropriate species of evidence. Questions of mental competency and of undue influence belong in this respect to the same class: because as is said by Jarman, in his jwork on wills, “ The amount of undue influence which will be sufficient to invalidate a will, must of course vary with the strength or weakness of -the mind of the testator.” (1
 
 Jarman on Wills,
 
 36.) So the mental strength and condition of the testator is directly in issue in every case of alleged undue influence ;
 
 *158
 
 and the same evidence is admissible in every such case, as in cases where insanity or absolute incompetency is alleged. It is abundantly settled that upon either of these questions, ,the declarations of the testator, made
 
 at or before
 
 the time of the execution of the will, are competent evidence. The only . doubt which exists on the subject is, whether declarations made I
 
 subsequent
 
 thereto may also be received.
 

 Clear and accurate writers have been led into confusion on this subject, by not attending to the distinctions growing out of the different purposes for which the evidence may be offered. Mr. Grreenleaf, in his work on evidence; in treating of the invalidity of wills, in consequence of the insanity, or mental imbecility of the testator, says : “ In the proof of insanity, though the evidence must
 
 relate to
 
 the time of the act in question, yet evidence of insanity immediately before or
 
 after
 
 .the time is admissible. Suicide committed by the testator soon after making his will is admissible as evidence of insanity, but it is not conclusive.” And in the same section he adds:
 
 “ The declarations of the testator himself
 
 are admissible only when they were made so.near the time of the execution of the will as to become a part of the
 
 res
 
 gestæ,” and he refers for the last proposition to
 
 Smith
 
 v. Fenner,
 
 supra. (See 2 Green. Ev.
 
 § 690.) Nothing could be more incongruous than the different branches of this section. To say, that the
 
 insanity
 
 of the testator, subsequent to the making of the will, may be proved', but that the declarations of the testator are inadmissible for the purpose of proving it is not a little extraordinary. It admits the fact, but excludes the most common and appropriate evidence to establish it.
 

 This incongruity, and the citation of the case of
 
 Smith
 
 v. Fenner, where the declarations were offered not to prove insanity or mental imbecility, but fraud and circumvention, shows that the attention of the learned author was not directed to the distinction I have alluded to. The first position advanced by Mr. Greenleaf in this passage, viz: that the insanity or incapacity of the testator
 
 after
 
 the execution of the will may be proved,
 
 *159
 
 not as important in itself, but as a means of arriving at his condition when the will was executed, seems to be sustained by authority.
 
 (Dickinson
 
 v.
 
 Barber,
 
 9
 
 Mass.
 
 225;
 
 Grant
 
 v.
 
 Thompson,
 
 4
 
 Conn. R.
 
 203 ;
 
 Irish
 
 v.
 
 Smith,
 
 8
 
 Serg. & Rawle,
 
 573.) But the latter, that this cannot be established by the conversation or declarations of the testator himself, is in conflict with numerous cases. In
 
 Stevens
 
 v.
 
 Van Cleve,
 
 (4
 
 Wash. C. C. R.
 
 262,) the question arose, and Washington, J. said, “ The only point of time to be looked at by the jury, at which the capacity of the testator is to be tested, is that,
 
 when the will was executed.
 
 He may have been incapable to make a will at any time before or after that period, and the law permits evidence of such prior and subsequent incapacity to be given. But unless it
 
 bear upon
 
 that period, and is of such a nature as to show incompetency when the will was executed, it amounts to nothing.” In
 
 Rambler
 
 v.
 
 Tryon,
 
 (7
 
 Serg. & Rawle,
 
 90,) upon a question of mental imbecility, the plaintiff was permitted to prove that the testator, in the absence of his wife, to whom he had devised his property, “ told the witness that his father-in-law and wife plagued him to go to Lebanon: that they wanted him to give her all, or he would have no rest, and that he did not wish to go to Lebanon.” The court held this proof admissible as evidence of weakness of mind, operated upon by excessive and undue importunity. It does not distinctly appear from the report of this case, whether the declaration was prior or subsequent to the making of the will; but in the subsequent case of
 
 McTaggart
 
 v.
 
 Thompson,
 
 (14
 
 Pennsyl. R.
 
 149,) it is dictinctly asserted by the court, that the declaration was
 
 after
 
 the execution of the will. Rogers, J. says, “It is expressly ruled'in
 
 Rambler
 
 v.
 
 Tryon,
 
 (7
 
 Serg. & Rawle,
 
 90,) that the declarations of the testator,
 
 although after
 
 the execution of the will, are evidence of imbecility of mind.”
 

 The offer in the case of
 
 McTaggart
 
 v.
 
 Thompson
 
 was, to prove declarations of the testator
 
 after
 
 the execution of the will as to the disposition of his property,
 
 “
 
 that he had ruined his family, and that he had been deceived and imposed upon by
 
 *160
 
 persons who procured him to make his will.” The court held the evidence admissible. The case of
 
 Reel
 
 v.
 
 Reel,
 
 (1
 
 Hawks,
 
 247,) is a leading case on this subject, and one which has been supposed to conflict, and was supposed by the court which decided it to conflict with several 'of the cases I have cited, especially
 
 Jackson
 
 v.
 
 Kniffen,
 
 (2
 
 John.
 
 31,) and
 
 Smith
 
 v.
 
 Fenner
 
 (1
 
 Gallis.
 
 170;) but which when viewed in the light of the arrangement of the cases which is here adopted, will be seen to be in entire harmony with them. The offer in
 
 Reel
 
 v.
 
 Reel
 
 was to prove repeated declarations of the testator, made
 
 after
 
 the execution of the will, in which he stated its contents to be materially and utterly different from what they were. These declarations were offered in connection with conflicting testimony upon the point of testamentary capacity. The evidence here offered bore exclusively upon the question of the competency of the testator : and of course did not fall within the principle of those cases, which exclude declarations bearing upon questions of fraud, duress, &c. unless a part of the
 
 res gestæ.
 
 Hence there was no necessity, as the court seemed to suppose, for overruling the cases of
 
 Jackson
 
 v.
 
 Kniffen
 
 and
 
 Smith
 
 v. Fenner, in order to admit the evidence offered in this case. The decision of the court in holding the evidence admissible, is not in conflict so far as I have been able to discover with any adjudged case, either in this country or in England, and on the other hand is in entire harmony with what seems to be the established doctrine, that the insanity or' imbecility of the testator subsequent to making the will, may be proved, in connection with other evidence, with a view to its reflex influence upon the question of his condition at the time of executing the will. Indeed, if the latter doctrine is sound it necessarily follows that the decision is right.
 

 This conclusion is of course decisive of the present case, which is, identical in principle with that of
 
 Reel
 
 v.
 
 Reel.
 
 Here as in that case the offer was to prove declarations of the testator, stating the contents of the will to be entirely different from what they were in fact: and these declarations were offered in
 
 *161
 
 connection with other evidence bearing upon the competency of the testator at and before the execution of the will. If evidence of the mental condition of the testator
 
 after
 
 the execution of the will is admissible in any case, as to his capacity when the will was executed, and the competency of such proof seems to be sustained by many authorities and contradicted by none; then it is clear that the testimony offered here should have been admitted.
 

 It does not follow from this, that evidence of this nature is . necessarily to be received, however remote it may be in point ‘ of time from the execution of the will. The object of the evidence is to show the mental state of the testator at the time; when the will was executed. Of course, therefore, it is admissible only where it has a legitimate bearing upon that question: and of this the court must judge as in every other case where the relevancy of'testimony is denied. If the judge can see that the evidence offered cannot justly be supposed to reflect any light upon the mental condition of the testator*, at the time of making the will, he has an undoubted right to exclude it. In the present case it was impossible for the judge to say this in advance of any information as to the precise period when, and the circumstances under which the declarations proposed to be proved were made.
 

 There is no conflict between the doctrine here advanced in regard to the admissibility of the species of evidence in question, and the rule before adverted to, which excludes it when the issue is as to the revocation of a will. The difference between the two cases consists in the different nature of the inquiries involved. One relates to a voluntary and conscious act of the mind; the other to its involuntary state or condition. To receive evidence of subsequent declarations in the former case, would be attended with all the dangers which could grow out of changes of purpose, or of external motives operating upon an intelligent mind. No such dangers would attend the evidence upon inquiries in relation to the sanity or capacity of the testator.
 

 
 *162
 
 It is unnecessary to notice the other points in the case. It may however be proper to say that the testimony offered and rejected, in regard to the two thousand acres of land in Florida, Was wholly immaterial, as it would not if given have been in the least inconsistent with the will, which in terms admitted that the land had formerly belonged to William.
 

 The judgment of the supreme court must be reversed, and there must be a new trial of the issues.
 

 Denio, Johnson, Parker, Allen and Edwards, Js., concurred.
 

 Gardiner, C. J., dissented.
 

 Judgment of the supreme court reversed and new trial ordered.