In the Matter of the Estate of MAX LIPPMAN, Deceased.*

Surrogate's Court, New York County, March 19, 1935.

*Matthew Swerling,* for the executors, proponents.

*David L. Podell* [*Mortimer Hays, Jacob J. Podell* and *Robert J. Rudner* of counsel], for the contestant.

*John T. Dooling,* special guardian.

*Hartman, Sheridan, Tekulsky & Pecora,* for the widow.

DELEHANTY, S. A legatee under the instrument propounded as the will applies for a special panel of jurors. Objection to such panel is made by contestant.

* See, also, 155 Misc. 6.

A trial was had heretofore before a jury called in the usual course. At the close of the case the court directed a verdict on those issues, which related to testamentary capacity, to undue influence and to fraud. In respect of the issue of testamentary capacity contestant conceded that he had failed; in respect of the other two issues the court held as matter of law that contestant had made no case. The jury disagreed as to the issues submitted to it on due execution. A retrial thereof has been ordered.

The estate in controversy is said to amount to a half million dollars. The trial already has developed considerable heat, at least among the attorneys. In that trial the issues originally entitled contestant to present proof respecting declarations and conduct of deceased both before and after the date of the alleged execution of the will. When the court submitted to the jury only the issues which related to due execution a large bulk of the evidence presented became unimportant. Particularly was this true in respect of declarations of deceased.

In conformity with the rulings first catalogued in *Waterman* v. *Whitney* (11 N. Y. 157) and repeated in *Matter of Kennedy* (167 id. 163); *Matter of Woodward* (Id. 28); *Gick* v. *Stumpf* (204 id. 413); *Smith* v. *Keller* (205 id. 39), and *Matter of Putnam* (257 id. 140), the court ruled that the declarations of deceased made after the date of the propounded instrument could not be considered by the jury on the issues relating to due execution.

The vigorous and able counsel for contestant asserted vehemently his right to use such declarations of deceased in an assertive sense in support of what contestant claimed to be a plan or purpose of deceased to simulate a due execution of his will so as to deceive his wife. Despite rulings by the court and despite objections of proponent to his failure to observe the direction of the court, contestant's counsel persisted in his attitude and, in violation of the court's direction, referred to such statements in his address to the jury. Counsel is equally vigorous in his declarations now that he has the right to present such proof and to comment on it though the issues to be retried are those only which relate to due execution. Such attitude of persistent non-conformity to the court's rulings, unless corrected in the forthcoming trial, may tend to instill in some juror's mind the thought that legitimate evidence is being excluded.

The controversy which is presented by the issues ordered to be retried has most unusual aspects. Two of three subscribing witnesses testified on the first trial that the signature of deceased was not upon the propounded instrument at the time they put their names thereon and that it was not put upon the instrument

in their presence during the transaction in which they participated. The instrument itself is carefully drawn. Each sheet of it is signed on the margin by deceased. It is signed at the end by deceased. Changes in the text are carefully made in the handwriting of deceased and such changes are initialed by deceased. No doubt of authenticity remains. The third attesting witness testified fully in support of the will but was not present on the occasion when the other witnesses signed. The attestation clause, which purports to recite the signing by all three witnesses at the same time and after the testator, is repudiated *in toto* by the two witnesses who disaffirm the will though they signed the attestation clause. The remaining witness disputes the attestation clause in so far as it recites a signing by him coincidentally with the other witnesses. The two witnesses who so deny due execution by the testator are related by blood or marriage to contestant. The will was drawn by a lawyer associate of deceased, who was himself a lawyer. It was drawn on directions given by deceased personally to the draftsman. These facts and the correspondence between deceased and the draftsman would warrant a finding by the jury that deceased was intent upon the due execution of this instrument and that he was fully alive to and familiar with all of the steps necessary to effect a valid execution of it.

Proponent asserts that there exists here a family conspiracy to destroy this will and that the testimony of the two subscribing witnesses adverse to the will is dictated by their desire to assist contestant to obtain property which deceased intended he should not have. These witnesses refused to communicate with the attorneys for proponent and attended in court only because subpœnaed to attend there. In the trial the court held that the circumstances developed by the examination and cross-examination of the subscribing witnesses and by the other proof in the case warranted the submission to the jury of the question of due execution. The authorities support that ruling. (*Trustees, etc.*, v. *Calhoun*, 25 N. Y. 422, and note at pp. 425, 429; *Peck* v. *Carey*, 27 id. 9, 30; *Matter of Kellum*, 52 id. 517; *Matter of Cottrell*, 95 id. 329; *Matter of Huber*, 181 App. Div. 635, 640; *Wyman* v. *Wyman*, 118 id. 109; affd., 197 N. Y. 524; *Matter of Ewen*, 206 App. Div. 198; *Matter of Marley*, 140 id. 823; *Matter of Smith*, 120 Misc. 370; *Matter of Maguire*, 154 id. 704.) In the last named case this court admitted a will to probate despite testimony adverse to the will by the only subscribing witnesses thereto. Courts have been astute to expose and to defeat conspiracies designed to prevent probate of the will of a testator. The note to *Trustees, etc.*, v. *Calhoun* (*supra*) is interesting proof that such attempts were not unknown even in much earlier days.

The jurors were instructed that they might determine that the testimony of these subscribing witnesses was false. They were instructed, however, that even if such result were reached by them in their deliberations they could not draw any inference in support of the will by reason of disbelief of testimony adverse to it. They were instructed that proof in support of the will would then have to be found *dehors* the testimony so repudiated. They were instructed that on all the proof in this case there existed enough to support a finding upholding the will, though they were further advised that they were wholly at liberty to find against the will.

The unusual character of the proof on the fact of execution; the unusual character of the legal questions which arise out of such proof; the need for care and discrimination by the jury in applying to these facts rules of law not commonly declared to a petty jury; the zeal and aggressive tactics of counsel for contestant as evidenced by his proceedings on the former trial and his declarations of his purpose on the new one; the amount of the estate, and the fact that an ordinary jury has failed to reach an agreement on the issues submitted, all combine to invoke the court's discretion to order a retrial before a panel of jurors specially selected.

That discretion will be exercised in favor of proponent's motion and a special panel of fifty jurors will be ordered to attend upon such new trial. The Appellate Division of this Department in *Matter of Eno* (202 App. Div. 739) affirmed an order of this court directing the calling of a special jury in a case in which the issues were no more involved than those here originally involved (*Matter of Eno*, 118 Misc. 431). Some of the issues here involved did not arise at all in the *Eno* case. It has been the experience of both of the surrogates of this court that the rules of law applicable to the issues arising in a hotly contested probate are with difficulty comprehended by the ordinary jury. There can be no legal wrong to a private litigant because of an increase in intelligence in the jury box. It may be that in matters which affect the *mores* of a community a community opinion expressed by a jury drawn from all walks of life may be desirable. In an issue which involves only the question whether the right to make testamentary disposition of property is to be secured to one now deceased despite efforts to destroy his will, there seems no reason why the best grade of intelligence should not be made available.

Since a review of this decision is much to be desired so that the correct practice in such situations as this may be prescribed by the Appellate Division, the order now signed provides for the attendance of the jury on April 22, 1935.