JOHN SWENARTON AND ANOTHER, Appellants, v. MARY HANCOCK AND OTHERS, Respondents.

*Will—when all witnesses to it, they being non-residents, need not be examined—*
*1837, ch. 460, §§ 10, 17.*

Upon an application for the admission to probate of a will and three codicils thereto, it appeared that both of the attesting witnesses to the first codicil resided in the State of New Jersey, and that the codicil was there exe-

cuted. One of the witnesses was called and testified to the formal execu-
tion of such codicil. While the other witness thereto, who was present in
court, was being examined as to other matters, the counsel for the contest-
ants, none of whom were infants, admitted the formal execution of the
said codicil, and that the signature of the witness thereto was in his hand-
writing and was made by him.

*Held*, that the statutory requirement that all the witnesses to a will must
be examined, is subject to the qualification that they are all residents of this
State, and that under the circumstances of this case the proof of the due
execution of the codicil by the witness who testified to its execution was
sufficient to require it to be admitted to probate.

Probate of two codicils to a will refused, on the ground that they were not
the free or voluntary act of the testator, but were procured by fraudulent
misrepresentations.

APPEAL from a decree of the Surrogate of Rockland county ad-
mitting to probate the will of John Hancock, deceased, and reject-
ing three alleged codicils thereto.

The first codicil was rejected on the ground that the proof of its
execution was insufficient; the other two on the ground that they
were procured through fraud and undue influence.

Both the witnesses to the first codicil resided in New Jersey.
One of them was called and testified to its formal execution, while
the other witness thereto was present in court, being examined as
to other matters. The counsel for the contestants, none of whom
were infants, admitted the formal execution of the codicil, that the
signature of the witness thereto was in his handwriting and was
made by him.

*Will. Mann*, for the appellants.

*Edwin G. Davis*, for the respondent, A. S. Walsh.

*W. H. Taggard*, for the respondent, John B. Locke, executor.

*Amos G. Hull*, for the respondent, James M. Allen.

GILBERT, J.:

The proof of the due execution of the will admitted to probate,
and of the competency of the testator to do the act at the time the
will was executed, was sufficient. Indeed, no contest respecting
the validity of that will has been made before us, unless the effort to
show that the testator was *non compos mentis* should be so regarded.

Only one witness to the first codicil was examined, but we think any defect in the proof thereof was cured by the admission of the due execution thereof made by the contestants, and adopted by the proponents and the Surrogate on the hearing before the latter. The attesting witnesses to this codicil resided in New Jersey, and the codicil was executed in that State. The witness to this codicil, who was not examined, was before the Surrogate, and testified as to other matters, but his examination as a subscribing witness appears to have been waived by the proponents and contestants, and an admission of the due execution of the codicil to have been taken in lieu of such examination. There being no infants in the case, I see no objection to giving that effect to the admission of the parties. The statutory requirement that all the witnesses to a will must be examined seems to be subject to the qualification that they are residents of this State. (L. 1837, ch. 460, §§ 10, 17.) The sections cited must be read together. One contains a direction, the other a prohibition. The former directs the examination of two at least of the witnesses, if so many are *living in this State.* The latter prohibits the admission of a will to probate until the witnesses to the same *residing within this State,* &c., &c., shall have been examined, &c., *as hereinbefore prescribed.*

The substitute provided for the examination of non-resident witnesses is an inquiry by the Surrogate into the facts and circumstances connected with the execution of the will. Under the circumstances of this case, we think the proof of the due execution of the first codicil was sufficient. (Redfield L. & P., 96, *et seq.*, and cases cited.)

With respect to the second and third codicils, the testimony warrants the conclusion at which the Surrogate arrived, namely : that they were not the spontaneous or free or voluntary acts of the testator, but that, on the contrary, they were procured by misrepresentation and deception, persistently practiced from time to time by the proponent and by members of his family. The will was made on January 2, 1874. Its conformity with the intentions of the testator, repeatedly declared both before and after it was made, was satisfactorily proved. The first codicil was executed on January 30, 1874. By the will the testator made generous bequests to his nephew Walsh, to his friend Allen, to Mrs. Thatcher, with whom he had boarded dur-

ing a long period, and to her daughter. Towards these persons the testator had always manifested an affectionate regard. He made Walsh and Allen executors of his will. The only changes wrought by the first codicil were gifts of legacies of $5,000 to his nephew, Augustus Swenarton, a son of the proponent, and the testator's sister Maria. At this time the testator was about seventy-four years of age. He was afflicted with diabetes, and had been smitten with one or more strokes of apoplexy. In February, 1874, he was stricken by paralysis. In April following he became an inmate of the house of the proponent, who is the husband of a sister of the testator. It is quite apparent that at this time the testator was very feeble, and shortly afterwards his condition became, and thenceforward until his death continued to be, that of a person who was rapidly sinking under the weight of years and disease into helpless decrepitude and decay. We are inclined to the opinion that the attack made upon the testamentary capacity of the testator was unjust, and that it was a failure. The testimony has impressed us with the belief that he retained sufficient testamentary capacity until a few days before his death. We do not deem it necessary to make a positive decision upon that subject. It is certain, however, that his enfeebled condition exposed him to artifice and deception, and rendered him credulous and dependent, while, at the same time, it incapacitated him from making the requisite effort to detect falsehood and fraud. He remained in the family of the proponent until his death in September, 1874. The evidence tends very strongly to prove that the testator's stay there was opposed to his wishes, and that it was the result of compulsion on the part of the proponent and members of his family. The second codicil was executed on April 14, and the third one on July 1, 1874. The history of those codicils, as presented by the evidence, reveals a course of misrepresentation and deception on the part of the proponent and others, who, from time to time, surrounded the testator, whereby a belief was instilled into his mind that his will was not a legal instrument, and that his former friends, Walsh, Allen and Mrs. Thatcher, instead of being worthy of his regard, were hypocrites and rogues. Statements of facts strongly prejudicial to the characters of those persons were

made to him, some of which were untrue, and others of which, though not false, were perverted so as to become means of deceiving the testator as much as if they had been untrue. I refer now to the charge brought against Mr. Walsh of exacting *bonuses* from borrowers upon the extension of loans made to them by the testator. All that Walsh did in this respect was done at the testator's request, for his benefit, and, as he testified, in accordance with the testator's practice while in health. As to the practice of the testator there is corroborative evidence. And yet the acts of Walsh, in exacting or demanding bonuses in two or three instances, were so used by the proponent as to infuse into the testator's mind a distrust of Walsh's integrity, and, in connection with other statements which were untrue, to reverse the testator's feelings towards him. That the principal changes of the will, wrought by the second and third codicils, were produced by the misconduct of the proponent and others, to which allusion has been made, is evident as well from the attendant circumstances as from declarations made by the testator to the draftsman of those codicils and to other persons. The evidence leaves little room for doubt that the acts of the proponent and his confederates in respect to the second and third codicils were fraudulent, and originated in motives of personal benefit to themselves. They instigated the making of those codicils; they participated in the acts which led to the preparation, and formal execution of them. Most of the changes, made by those codicils in the will, were suggested by them. They detained the testator at the dwelling of the proponent, under circumstances which excluded his accustomed intercourse with those whom he had before regarded as his friends, and upon whom he had bestowed his confidence and affection, and while in that situation they plied him with the false and deceptive statements referred to. The codicils themselves speak upon this subject—*res ipsa loquitur*— and if further evidence respecting the motive which actuated the proponent were wanting, it would be found in his conduct whereby he supplanted Walsh as the confidential agent of the testator, and obtained possession of the papers and valuables of the testator, and of powers of attorney by which a large part of the testator's property was committed to his control and disposition. The

evidence in behalf of the proponent does not afford a satisfactory explanation of the misconduct thus imputed to him and others associated with him. In the absence of such countervailing evidence the inference that the second and third codicils were procured by fraud and undue influence on their part, is a logical necessity. Direct or positive proof on such a subject is not essential in order to invalidate testamentary dispositions. The effect of the testimony given by the contestants, was to shift the burden of proof upon the proponent, and to require him to satisfy the Surrogate that the second and third codicils were the free and spontaneous acts of the testator. As already stated, the evidence on the part of the proponent, we think, was insufficient for that purpose. A review of the adjudged cases on this subject is unnecessary. It will be sufficient to refer to two or three of them. (*Boyse* v. *Bossborough*, 6 H. L. Ca., 2, 47; *Shailer* v. *Bumstead*, 99 Mass. 112; *Tyler* v. *Gardiner*, 35 N. Y., 594.)

The decree of the Surrogate respecting the first codicil must be reversed, and the proceedings must be remitted to him, with a direction to admit that codicil to probate. In all other respects the decree is affirmed without costs, except that the disbursements of the executors on this appeal must be paid out of the estate.

Present—BARNARD, P. J., GILBERT and DYKMAN, JJ.

Ordered accordingly.