FLORENCE H. KING, Appellant,

*vs.*

GEORGE F. HOLMES, and another, Executors.

Oxford.    Opinion February 2, 1892.

*Will.    Undue influence.    Evidence.*

On the trial of the issue whether the execution of a will was procured by undue influence, the contestant is not aggrieved by the exclusion of evidence of threats of the testator's son, who subsequenty drafted the will, " I have injured you and Florence, [a brother-in-law and his wife,] a good deal already, and father will do what I want him to — just as I say," it not appearing that the words used related to the will and may be construed, in absence of the son's explanation, to mean no more than that the testator would follow the advice of his trusted son and legal adviser in the settlement of litigated matters between some of the testator's children, and in which he may have had some pecuniary interest.

A declaration by the testator in his will that the contestant, one of his children, had otherwise been amply provided for, must have great weight in considering whether the provisions of the will bear internal evidence that it was a free and voluntary act, and not the offspring of mental defect, obliquity or perversion.

Probate appeals are conducted under the rules of equity practice, the verdict being advisory only in settling the final decree.

ON REPORT.

This was an appeal from a decree of the Judge of Probate, for the county of Oxford, approving and allowing an instrument produced by the appellees, as the last will and testament of

Ebenezer R. Holmes, of Oxford, in said county, deceased. The appellant alleged in her reasons of appeal : First, That the instrument purporting to be the last will and testament of said Ebenezer R. Holmes, is not his will, but at the time of the execution thereof he was not in a condition of mind to understandingly and intelligently dispose of his estate. Second, That the execution of said instrument, by the said alleged testator, was procured by undue and improper influence, so that the provisions therein are not the fair, free and long and often expressed intentions of the said Ebenezer R. Holmes.

Under the direction of the court an issue was formed for the jury by submitting to them two questions, which, with the answers of the jury thereto, are as follows : "First, At the time of the execution of the instrument purporting to be the last will and testament of Ebenezer R. Holmes, was the said Ebenezer R. Holmes of sound mind?" "Answer. Yes." "Second, Was the execution of said instrument procured by the undue and improper influence of George F. Holmes and Walter E. Holmes, or either of them?" "Answer. No."

During the trial, the appellant offered evidence, some of which was excluded by the presiding justice on the ground of its remoteness and irrelevancy, and some of it for other reasons, as will more fully appear in the opinion of the court ; and, at the close of the evidence, the presiding justice stated to the counsel of the parties that, in his opinion, the evidence of unsoundness of mind, or of undue influence, was not sufficient to justify the jury in returning the verdict for the appellant; and that, if the jury should be induced to return such a verdict, he should, if asked so to do, feel it to be his duty to set the verdict aside.

Thereupon, it was agreed that a *pro forma* verdict should be taken in favor of the proponents, and that the whole case should be reported to the law court; and if, in the opinion of the law court, any of the rulings of the presiding justice in excluding evidence offered by the appellant, were erroneous, and the appellant was thereby aggrieved ; or, if his instructions to the jury to return a verdict in favor of the proponents of the will, were erroneous, and the appellant was thereby aggrieved ; then a

new trial should be granted; otherwise a decree should be entered, affirming the decree of the Judge of Probate approving and allowing the instrument as and for the last will and testament of the deceased.

The case appears in the opinion.

*J. S. Wright* and *J. P. Swasey*, for appellant.

Counsel cited: Red. Wills, Part I, p. 510, § 2, and notes; p. 515, § § 12, 14; *McLaughlin* v. *McDevitt*, 63 N. Y. 213; 1 Jar. Wills, pp. 35, 36, and notes; *Tyler* v. *Gardiner*, 35 N. Y. 559; *Ray* v. *Ray*, 98 Md. 366; *Lewis* v. *Mason*, 109 Mass. 169; *Rusling* v. *Rusling*, 35 N. J. Eq. 120; S. C. 36 Id. 607.

*George D. Bisbee* and *Richard Webb*, for appellees.

Haskell, J.    Two questions were raised at *nisi prius*. Was the testator of sound mind, and was his supposed will obtained by undue and improper influences.    The verdict finds he was of sound mind and negatives all undue and improper influence.

At the trial, the presiding justice stated that, in his opinion, no other verdict could properly be rendered, and thereupon the above verdict was taken upon stipulation by the parties, in substance, that any evidence shown to have been illegally excluded shall be considered by the law court together with that admitted, and if the verdict shall then appear to be wrong a new trial shall be granted.    In other words, the case substantially comes up on report of the full evidence.    This view is strengthened by the consideration that probate appeals are conducted under the rules of equity practice, the verdict being advisory only, in settling the final decree.    It may be disregarded when the justice of a case so requires, although the usual practice in probate appeals in this State may be to order a re-trial of the issues framed for the jury.    *Shailer* v. *Bumstead*, 99 Mass. 131; *Bradstreet* v. *Bradstreet*, 64 Maine, 204; *Larrabee* v. *Grant*, 70 Maine, 79; *McKenney* v. *Alvord*, 73 Maine, 221; *Maine Benefit Association* v. *Parks*, 81 Maine, 79.

The evidence shows that the testator left a widow eighty-four years of age, and three sons and two daughters, Florence and Louise. The eldest son and daughter were unmarried and lived at home with their parents on a farm. George was a lawyer in Portland, and Walter, the youngest son, and Florence, the youngest child and wife of a Mr. King, lived at Welchville, about three miles from their father's home. In 1880, Walter and Mr. King became partners in a general store at Welchville, and the evidence tends to show that the testator furnished some capital in the store enterprise in aid of his children by loan or otherwise. In April, 1888, before the will was made the following August, the partnership between Walter and King was dissolved and legal controversies arose between them, George being the counsel of Walter and the confidential adviser of his father.

At the trial, the appellant, Florence, called her brother Lyman as a witness and put to him the following question that was excluded, viz. : "Did you hear George say anything to any member of your family about what he would do, or any threat that he made against Mr. King and Florence, or either of them ?"

Threats by a person, charged with obtaining a will by undue influence, have sometimes been admitted in evidence as showing motive for conduct that may have operated to compel the making of a will, or more frequently, perhaps, may have prevented an opportunity for changing a will already procured. Much must be left to the judgment of the presiding justice in determining whether the supposed threats in such cases are connected with or relate to the subject matter of the issue on trial ; and especially so, when the answer sought, if responsive, cannot be presumed to be material evidence. Upon this ground the question put may well have been excluded, especially as it was known that the speaker of the supposed threats, from infirmity, could not testify, when, perhaps, the context might completely change the meaning of the language attributed to him and leave it harmless for any purpose.

But, assuming that the answer would have been as stated by

counsel at the time the question was put, the appellant is not aggrieved, inasmuch as the supposed threat, "I have injured you and Florence a good deal already, and father will do what I want him to,—just as I say," together with one of weaker import, sought to be proved by King, could not, even with the aid of all the other evidence excluded, have changed the verdict. At most, they show vexation and hostility from George towards King and Florence, arising out of a lawsuit between Walter and King, concerning partnership matters, wherein the testator may have had some pecuniary interest, and may fairly be construed to mean no more than that the testator, in the settlement of those matters, would follow the advice of his trusted son and confidential adviser. Nothing was said about a will, and the supposed threats cannot be said to refer to that subject, in the absence of evidence showing conduct that can be even distorted into undue or improper influence upon the testator.

The appellant offered to prove by Sheriff Wormell, who in 1888, attached the goods of King on a writ in favor of Walter, that he requested the testator to receipt for the goods so attached, and that the testator replied that he would be very glad to do it, but didn't dare to, because he was afraid George would not want him to do it. George was his adviser as well as counsel for Walter, and the testator might have given many worse reasons for his refusal. This evidence, considered in view of the lawsuit then pending between the parties, manifestly related to that controversy, and had no reference to the matter at issue here. The presiding justice upon that ground may well have excluded it. It was not offered as bearing upon the mental condition of the testator, and was irrelevant and immaterial.

The only other evidence excluded at the trial was the testimony of Florence, tending to prove that the testator furnished capital for the partnership between Walter and King. In this behalf the appellant has no cause of complaint, for the fact, if proved, would bear more strongly against her contention than in its favor. It would give cogent reasons for the attitude assumed by George, and more clearly show that his conduct and

discourse related to his father's pecuniary interest in the affairs of the partnership between Walter and King that was the cause of the litigation between them.

The partnership continued until the spring of 1888, before the supposed will was made in August, when controversies arose between the partners, that may have involved the interests of the testator, culminating in a lawsuit between them. George was the counsel of Walter as well as his father's adviser. The evidence, if that excluded be considered, tends to show vexation on the part of George, and perhaps threatening remarks towards King and Florence. The following August, George and his family visited his father, who returned to Portland with his son and executed the supposed will. The will was partly dictated and partly written by George, in his office, on the day after their return. A fair copy was made by a clerk and taken home that night by George, who brought it, with some interlineation, to the office, the next morning, where a clean draft was made by a clerk. It was then handed to the testator who deliberately read it, before witnesses were called to see its execution.

The testator, having read the draft prepared for him, being in the enjoyment of a sound and disposing mind, without compulsion or interference, signified his desire to execute it as his testament, and witnesses, men of understanding in such matters, being called, the testator then proceeded, in the form prescribed by law, to execute his will.

The facts in the case appealed to, as showing undue influence upon the testator, are the threats and conduct of George in the partnership litigation, hostile to the appellant and her husband; and the fact that the testator not long afterwards accompanied his son to Portland, perhaps for the purpose, and there made his will, aided by the fact that the appellant was given no immediate share in his estate.

It is not strange that a father should visit his son, upon whom he had relied for counsel from his youth up, more than a quarter of a century, for the purpose of finally disposing of his estate. Nor is it strange that he should seek advice from his

son in such matters, nor improper that he should do so. There is a "long stride" between any inference that can be drawn from the evidence offered at the trial, and the established fact of undue influence upon the testator. Because the appellant was disappointed and displeased with the provisions made for her is no reason for saying that her father did not understandingly and deliberately make them.

The testator was of sound mind. He charged one half of his entire estate with the support of his widow, a provision that enables her to live in the same state and condition that she had enjoyed during a long married life. He charged two-sixths of the remainder, one-sixth of his whole estate, with the support of the eldest daughter, who had always lived at home, unmarried. He charged one-sixth of the same remainder, one-twelfth of the whole estate, with the support of his eldest son, who had always had lived at home, being about fifty years of age and unmarried. He gave two-sixths of the same remainder, one-sixth of his whole estate, to Walter outright, and one-sixth, one-twelfth of the whole estate, to George. He says in the will that, Florence being amply provided for in other ways, he has purposely omitted to give her a present distributive share, but he does provide that the remainder of his estate put in trust for the support of his widow and two children, three-quarters of his whole property, shall be divided as the several trusts shall terminate among the surviving members of the family, the widow's half to be divided the same as the other half, thereby increasing the two remaining trusts by one-quarter of the whole estate, so they will comprise one half of it, and these two trusts upon their termination are to be divided equally between the four surviving children, Florence being named as one of them. And she may ultimately receive therefrom one-sixth of the whole estate. Of course, that result comes from the natural assumption that the cestuis survive in the order of their respective ages, and that the principal of the trusts proves sufficient to yield income to meet the purposes of them.

The purpose of the testator seems to have been, after securing the support of his widow, to divide his estate, one half to his two sons, George and Walter, Walter having twice as much as George, and the other half to a trust for the support of Lyman and Louise, this to go equally to their surviving brothers and sisters. These provisions are not unusual or extraordinary when considered with the statement of the testator that Florence had otherwise been amply provided for. No one should know that fact better than he ; and his statement of it must have great weight in considering whether the provisions of the will bear internal evidence, as contended by counsel, that it was "free and voluntary and not the offspring of mental defect, obliquity or perversion." It is conceded that the testator was of sound and disposing mind and memory ; and it is shown that he so continued to be for more than a year after the will was made, all the time living among and near to his children, nearer to all the others than to George, who is charged with the unnatural act of unduly influencing his aged father in the disposition of his estate to the prejudice of his youngest child, and yet, no particle of evidence shows that he had a desire or even a thought of changing his will.

A careful consideration of all the evidence offered at the trial shows that the verdict must be approved and that no other verdict could properly have been rendered.

> *Decree of the Probate Court affirmed. Taxable costs and reasonable counsel fees to be allowed out of the estate.*

PETERS, C. J., WALTON, VIRGIN, EMERY and FOSTER, JJ., concurred.