SIMON GOLDSMITH, executor, *vs.* ETHEL C. GRYZMISH.

Suffolk.    March 24, 1921. — April 7, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Will,* Validity.  *Fraud.    Undue Influence.*

The evidence, both direct and inferential, at the trial by jury of an issue, framed on an appeal from a decree of the Probate Court allowing a will of a woman which gave all her property, to the exclusion of the widow and two daughters of a son who had died fifteen years before the will was made, to her only surviving son, whom she had named executor without sureties on his bond, the issue being, whether the instrument was procured to be made by the fraud or undue influence of that son, warranted a finding that the will was not the free will of the testatrix and that the controlling influence of the son constrained her to do that which she would not have done if left to herself, so that an affirmative answer to the issue was warranted.

PETITION, filed in the Probate Court for the county of Suffolk on March 22, 1917, for the proof and allowance of the will of Henrietta Goldsmith, late of Boston.

The petition was heard in the Probate Court by *Grant,* J., by whose order a decree was entered allowing the will. Ethel C.

Gryzmish, a daughter of a deceased son of the testatrix, Jacob, appealed from the decree. In the Supreme Judicial Court, the issue, described in the opinion, was framed and was sent to the Superior Court for trial by jury. In the Superior Court the issue was tried before *Fox,* J. Material evidence is described in the opinion. The jury answered the issue affirmatively; and the petitioner alleged exceptions.

*H. Parker,* (*S. Sigilman* with him,) for the petitioner.

*A. K. Cohen,* (*M. E. Bernkopf* with him,) for the respondent.

DE COURCY, J. By the will of Henrietta Goldsmith, dated September 23, 1913, all of her estate was given to her son Simon Goldsmith. He was nominated therein as sole executor, with a direction that he should be exempt from furnishing any surety on his official bond. The will was allowed in the Probate Court and the respondent Ethel C. Gryzmish (formerly Goldsmith), a granddaughter of the testatrix, appealed from the decree. In the Supreme Judicial Court a single jury issue was framed, viz: "Was the instrument propounded for probate as the last will of Henrietta Goldsmith procured to be made by the fraud or undue influence of Simon Goldsmith?" This issue was sent to the Superior Court for trial by jury, and was answered by them in the affirmative. The main question raised by the exceptions is whether the evidence warranted this answer.

By accepting the testimony most favorable to the contestant, the jury could find the following material facts. The testatrix was eighty-three years old when this will was executed. Real estate was assessed to her on the preceding first of April to the value of $293,400, and comprised a hotel and tenement property. She personally attended to the details of rent collection and repairs and spent her days at an office in one of the houses. She also owned mortgages on real estate, among them two, amounting to $78,000, given by her late son Jacob. Her personal expenses were few and, since 1900, she had lived at the home of her son Simon, paying nothing for board or lodging. She gave away no substantial sums of money except $1,000 to Mrs. Gryzmish and a like amount to Simon's daughter, at the time of marriage; an allowance of $125 per month to Minnie Goldsmith, widow of Jacob; and a gift to her of $3,000 when going to Carlsbad for treatment.

Jacob died on September 30, 1898, leaving said widow and two young daughters, Jessie and Ethel. The testatrix entertained for her two sons and their children very friendly and affectionate feelings. More than once she had expressed an expectation and intention to divide her property equally between her two sons, if Jacob had lived; and said "now that he is gone I intend that half that I would have left to him shall go to his two children."

Shortly before 1909 "she started to show and feel her age both mentally and physically." Minnie Goldsmith and her two daughters visited her at Simon's house occasionally, but oftener went to her office. She frequently asked them not to inform Simon of their visits, or of the small gifts of money she then made to the girls, explaining that he would make it uncomfortable for her at home, and that she was afraid of him, and would do anything for peace. One evening in the spring of 1909, while the testatrix, Simon, his wife, daughter and son-in-law were having dinner together, she said in the hearing of all of them, that she was sorry she had made a will which gave the bulk of her estate to Simon, and wished to make a new will that would give him only a life interest, and would leave the estate after his death to her three grandchildren, Lily, Ethel and Jessie. Thereupon Simon said, "If you do that I will go to parts where you will never see me again." His mother said, "You won't do that Simon?" To which he replied, "I certainly will," and he jumped up and left the table.

The attorney who drew the will in controversy was also the attorney for Simon; and the latter was present when instructions were given about drawing the instrument. On the day of its execution, Minnie Goldsmith and her two daughters were called to the attorney's office and there found the testatrix and Simon. At that time the testatrix signed, in addition to the will, a deed of her property 1414 to 1424 Tremont Street, and also assignments of said two mortgages on the Jacob Goldsmith property, giving after the death of the testatrix a life interest to Minnie, and the remainder to her daughters. There was also executed an instrument signed by the testatrix, Simon, Minnie and her two daughters, reciting said transfers and will, and agreeing that the disposition of the property was mutually satisfactory, that it

was to be binding on the parties, and that no contest should be made thereon. The present contestant, Ethel C. Gryzmish, was then a minor. Minnie Goldsmith protested that her children were not being treated right, but the testatrix said to her "I can't help myself."

Henrietta Goldsmith died on December 28, 1916. Two days before her death Simon recorded deeds which were dated April 12, 1905, purporting to convey from the testatrix to him a number of parcels of real estate, the assessed value of which on May 1, 1905, was $230,600, and on April 1, 1913, was $247,400. On the same April 12, 1905, a mortgage of $100,000 from Simon to the testatrix was discharged, and she assigned to him mortgages on real estate amounting to $55,611.50, all but two of which were recorded with the deeds. Other money of the testatrix was traced to his hands; and the rentals between 1905 and 1916, as well as the annual interest payments on the Jacob Goldsmith mortgages, were not accounted for. The assessed value of the real estate, conveyed to Minnie Goldsmith and her children on September 23, 1913, was only $46,000.

From the foregoing, and other cumulative facts, plainly the issue of undue influence was for the jury. The law applicable thereto has been fully stated in the recent case of *Neill* v. *Brackett*, 234 Mass. 367, and need not be repeated. Here was both direct and inferential evidence that the will was not the free act of the testatrix, and that the controlling influence of her son Simon constrained her to do that which she would not have done if left to herself. The weight of the conflicting evidence was for the jury to determine.

There was no error in the refusal to instruct the jury in the language of the requests. The first and third selected special facts for emphasis. See *Altavilla* v. *Old Colony Street Railway*, 222 Mass. 322, 325. The subject matter of all of them was fully covered by the charge. And the judge instructed the jury substantially in the language of the court in *Shailer* v. *Bumstead*, 99 Mass. 112, 121, as to what the contestant must prove to establish the charge of fraud and undue influence.

The executor has waived his exceptions to the judge's refusal to make certain rulings requested at the hearing of his motion to set aside the verdict. There were also numerous exceptions

to the admission of evidence, — especially during the cross-examination of Simon Goldsmith. It would serve no useful purpose to discuss them in detail. An examination fails to disclose any reversible error.

*Exceptions overruled.*