SISSON, Executor, etc., v. CONGER *et al.*, appellants.

*Evidence — impeaching witness — intemperate habits — declarations of deceased testator — opinions of witnesses.*

There is no exception to the rule that a party cannot impeach his own witness. As far as he can go is to show the witness to be mistaken or that the facts are different from the version the witness gives of them.

A physician who had attended a deceased person gave material evidence as to the capacity of such person to do a testamentary act. *Held,* that it was competent for the opposing party to show that the witness, during the time of his attendance on deceased, was under the influence of liquor and not capable of judging of the mental condition of deceased.

The declaration of a deceased person that he had destroyed his will, not made at the time of such destruction, *held* (following *Waterman* v. *Whitney*, 11 N. Y. 157), inadmissible to show the intention of deceased.

Statements made by a testator concerning the contents of his will which were erroneous, *held,* admissible to show condition of testator's mind.

Several non-professional witnesses were asked : " From the acts and declarations of S " (a deceased person), " by you related and testified and as you observed, what impressions did it make on your mind as to his mental condition ?" *Held* (following *People* v. *Real*, 42 N. Y. 270), that the question called for an opinion witness was not competent to give.

ACTION to establish the will of Nathaniel Sisson, deceased, as a lost or destroyed will. The deceased was a resident of Collins, Erie County, N. Y., and was possessed of an estate worth at the time of his death about $20,000. In January, 1867, he executed a will in due form, and left in the custody of Frank A. Newel, Esq., the attorney who prepared it, and who resided at Gowanda, Cattaraugus County. By such will the plaintiff, Allen Sisson, was appointed sole executor. The will remained in the hands of the attorney until November 1, 1869. Sisson, the deceased, was at the attorney's office at various times, and saw it on the day last named ; it was delivered up by one Snyder, a clerk of the attorney, to the deceased who took it away with him. It was never seen afterward. Nathaniel Sisson died February 2, 1870.

Mr. Justice BARKER, before whom the action was tried, found among other facts, that from a time in the month of October, 1869, and prior to the delivery of the will by Snyder into the hands of the deceased up to the time of his death, he, deceased, was in the constant and habitual use of strong and spirituous drinks ; that

Sisson v. Conger.

much of the time such use was excessive, and, for the greater part of the period, caused delirium and produced derangement of his mind, and he was laboring under delusions of various sorts ; that he had delirium tremens and did not possess testamentary capacity, but that he had during the time lucid intervals.

Judgment was given for the plaintiff establishing the will, the contents of which were proved and letters testamentary were directed to be issued to the plaintiff.*

The other material facts appear in the opinion.

*NOTE—The following is the opinion of Mr. Justice BARKER, written upon the decision of this case, upon the trial of the same at special term before him :

BARKER, J. Upon the facts which I have found and reported it must be held, that the will of Nathaniel Sisson had a legal and valid existence at the time of his death.

It is provided by the Revised Statutes, section 37, as follows :

"No will in writing, except in cases hereinafter mentioned, nor any part thereof, shall be revoked or altered otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed ; or unless such will be burnt, torn, canceled, obliterated or destroyed, *with the intent and for the purpose of revoking the same by the testator, himself.*" * * * *

By section 90, it is further provided, that

" No will of any testator who shall die after this chapter shall take effect as a law, shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the life-time of the testator."

The will having been delivered into the custody of the testator in his life-time, and full search having been made for it since his death, and not being found, the presump. tion is that the testator destroyed it himself.

The whole case then is involved in the single question, had the testator testamentary capacity when he so destroyed his will?

There being no proof, where or in what manner he destroyed it, the question turns· on legal presumptions.

The first and strongest presumption is that the testator destroyed the will *animo revocandi.*

The plaintiff, to meet and overthrow this presumption of law, proves that for a greater part of the time after the will came to the testator's hands, he was diseased with the vice of drinking, which produced delirium and mental derangement, so that he did not have testamentary capacity. A destruction, while in that condition, would not effect a revocation. The act of an insane man has no valid intention.

The general condition of mind of the testator being unsound, during the period when the will must have been destroyed, I think the burden of proof is shifted from the side of the plaintiff to the side of the contestant.

Where incapacity is caused by drunkenness, and such incapacity is not habitual, and comes only from casual intoxication, in such case the rule is, doubtless, that the party alleging mania must prove the act to have been done during such temporary fits of insanity.

But when the delirium is habitual and extends over a period so long as in this case, then in my judgment, the case is the same, and no different from a case of constitutional or fixed insanity, the patient having lucid intervals, during the period when the act in question must have been done.

When aberration of mind is caused by sickness or disease, there is no presumption that it continues for any time longer than it is proved to exist. But this very sound rule does not apply to the case in hand, for the party seeking the probate of this will, does

*Lewis & Gurney,* for appellant. The plaintiff could not impeach or contradict his own witness. *Thompson* v. *Blanchard,* 4 N. Y. 303; *People* v. *Safford,* 5 Denio, 112; *Hunt* v. *Fish,* 4 Barb. 324; *Pickard* v. *Collins,* 23 id. 444; *Parsons* v. *Suydam,* 3 E. D. Smith, 276; *Keutgen* v. *Parks,* 2 Sandf. 67. The declarations of the deceased, which were made two years after the execution of the will, as to its contents, should have been excluded. *Waterman* v. *Whitney,* 11 N. Y. 157; *Jackson* v. *Betts,* 6 Cow. 377; *Betts* v. *Jackson,* 6 Wend. 173. The questions to witnesses not experts as to mental condition of deceased were improper. *Real* v. *People,* 42 N. Y. 270; *Clapp* v. *Fullerton,* 34 id. 190; *People* v. *O'Brien,* 36 id. 276; *De Witt* v. *Barley,* 9 id. 371; S. C., 17 id. 347. It was incumbent on plaintiff to show that deceased destroyed the will while in a condition of delirium. *Codd* v. *Rathbone,* 19 N. Y. 37; *Patterson* v. *Patterson,* 1 Rob. 184; *Marvin* v. *Marvin,* 4 Keyes, 9; *Ean* v. *Snyder,* 46 Barb. 230; *Delafield* v. *Parish,* 25 N. Y. 10; *Brown* v. *Torrey,* 24 Barb. 583; *Cook* v. *Cook,* 53 id. 180; *Idley* v. *Bowen,* 11 Wend. 227; *Voorhees* v. *Voorhees,* 39 N. Y. 463; *Shultz* v. *Shultz,* id. 656.

*Torrance & Allen,* for respondent. To revoke a will requires the same testamentary capacity as to make one. An insane person is incapable of revoking a will by destroying it. *Smith* v. *Waite,* 4 Barb. 28; *Allison* v. *Allison,* 7 Dana (Ky.), 90; *Ford* v. *Ford,* 7 Humph. (Tenn.) 92. General insanity having been shown, the onus if showing that the will was destroyed at a lucid interval was on the defendants. *Whitenack* v. *Stryker,* 1 Green Ch. (N. J.) 11; *Clark* v. *Fisher,* 1 Paige, 174; *Stevens* v. *Vancleve,* 4 Wash. C. C. 262; *Halley* v. *Webster,* 8 Shep. (Me.) 462. The declarations of the testator, before and after the revocation, were inadmissible. *Waterman* v. *Whitney,* 11 N. Y. 157. The questions put to the witnesses regarding their opinion of the mental condition of deceased were proper. *De Witt* v. *Barley,* 17 N. Y. 340; *Clapp* v. *Fullerton,* 34 id. 194;

---

not rely upon any presumption as to the continuance of the testator's insanity, but proves his condition, after the time the will was delivered to him, and has established, according to my finding of facts, that his incapacity was habitual. Jarman on Wills, vol. 1, p. 54; *Rolason* v. *Wellar,* 2 Green Ch. (N. J.) 604; 1 Williams on Ex'rs, 17-25.

The question in the case that has merited, and received, at my hands, the most attention and care, is the one of fact, relating to the mental condition of the testator from the last of October to the day of his death.

Without relying greatly on the opinion of witnesses, but judging from his acts, sayings and general deportment, I have found and reported as a fact that his delirium and derangement of mind was habitual and not exceptional; and that he had lucid intervals, and that they were his exceptional condition.

*O'Brien* v. *People*, 36 id. 282; *Seaman's Friend Society* v. *Hopper*, 33 id. 631. The finding that the will had, at the decease of testator, a legal existence, etc., was a finding of fact. *Rider* v. *Powell*, 28 N. Y. 317.

MULLIN, P. J. This action was brought to establish the last will of Nathaniel Sisson, deceased, and which was destroyed by the testator before his death while he was mentally incapable, by reason of drunkenness, of doing any testamentary act.

The court at Special Term ordered judgment, that the will, which it was proved the testator had made, should be recorded by the surrogate of Erie, in which county the testator resided at the time of his death. From this judgment Jane Conger, one of the daughters of the testator, appeals. The appellants' counsel seeks to reverse the judgment on several grounds, which I propose to consider in the order they are presented in his points. The first exception of the appellants' counsel is to allowing the plaintiff to contradict Ambrose Snyder, a witness called and examined by him. The witness when the objection was first taken, had testified that he was a clerk in the office of the attorney who drew the will in question, that he had seen it, knew where it was kept by the attorney, and that he, the witness, had delivered it to the testator. He was then asked to state a conversation he had with Allen Sisson the plaintiff, in reference to the will, after testator's death and before proceedings in the surrogate's office to prove the will, and the objection was then made that the declarations of the witness were not admissible. Plaintiff claimed the witness was biased against him, and he was compelled by the court to call him on the question of the loss of the will. The court held that under the circumstances the plaintiff was entitled to the privilege of a cross-examination of the witness. Whether the witness was biased against the plaintiff to such a degree as to render it proper to allow him the privilege of examining him as if he were called by the opposite party was for the court to determine, and we cannot review it.

The declarations of the witness were incompetent. He was not a party to the suit, nor did he stand in such a relation to the case, or the parties as to make his declarations evidence for or against either party.

Allowing to the plaintiff the privilege of cross-examination of the

witness, because he was biased against the plaintiff, merely permitted him to put leading questions to the witness. It did not authorize him to impeach him.

This, however, he was subsequently permitted to do by showing contradictory statements and conduct tending to show that the witness had conspired to extort money from the devisees under the will in order to procure its production. There is no exception to the rule that a party cannot impeach his own witness. He may show him to be mistaken, or that the facts are different from the version he gives of them. This is as far as he can go.

The admission of this evidence would call for the reversal of the judgment, were it not that as the case turned, the evidence of the witness was of very little importance. The facts were found not in opposition to, but in accordance with, his evidence.

The principal question considered by the referee was the mental capacity of the testator, and upon that question the witness gave no evidence.

One Robinson, a physician who attended the testator in his last illness, was examined as a witness in behalf of the plaintiff, and gave material evidence as to his capacity to do a testamentary act. The defendants offered to prove that the witness was, during the time of his attendance on the deceased, under the influence of liquor and not competent to judge of his mental condition. The court excluded the evidence and the defendant's counsel excepted. In this I think the learned judge erred. It is said in 1 Cowen and Hill's Notes, 763, that "in addition to the direct contradiction of the witness you may impeach him by proving that at the time of the transaction he was in such a state of mind as to be incapable of exercising a correct discrimination; one among other grounds is, that he was intoxicated." Again at page 767, the learned writers say: "A habit, such as drunkenness or paralysis, may be shown in truth to exist as impairing the powers of discrimination or recollection in a witness, though not with a view to show his moral habits."

The propriety of admitting such evidence is so manifest that it does not require argument to support it. The evidence offered should have been received.

The defendant offered to prove that the testator stated that he had destroyed the will. The evidence was excluded and the defendant's counsel excepted.

It was held in *Waterman* v. *Whitney*, 11 N. Y. 157, that the declarations of a testator as to his intention in destroying his will, made at the time of destroying it, are competent. But his declarations at any other time as to his intention are not competent.

The declaration that he destroyed the will is not admissible within the rule laid down by the case cited and was therefore properly excluded. Evidence was given tending to prove that during the last months of his life the testator was insane — that he acted and talked irrational. Among other things a witness testified, he talked about his will and plaintiffs' counsel asked him what the conversation was he had with him. This was objected to by defendant's counsel, the objection was overruled and the witness stated the contents of the will as told him by the testator. None of the provisions thus given are found in the will proved to have been executed by him. The evidence objected to was offered, I presume, to show the mental condition of the testator at the time of the conversation, and for that purpose it was competent.

Several non-professional witnesses were asked by plaintiff's counsel the following question : From the acts and declarations of Capt. Sisson (the deceased testator), by you related and testified, and as you observed, what impressions did it make on your mind as to his mental condition ?

The question was objected to — the objection was overruled and defendant's counsel excepted. This question is almost identical with those which were put to the witnesses in the case of the *People* v. *Real*, 42 N. Y. 270, and which the court of appeals held to be incompetent. The incorporation into the question of the words " by you related and testified " do not make the question competent. It mattered not whether they formed their opinion upon the matters related by them, or upon what they saw ; the question in either case called for an opinion that the witness was not competent to give. The evidence was improperly received.

The remaining points of the counsel relate to the correctness of the conclusions the judge at special term arrived at, but as there must be a new trial by reason of the admission of improper evidence and the rejection of competent evidence, it is unnecessary to express an opinion as to the views of the learned judge as the facts may be materially changed upon another trial.

*Judgment reversed and new trial ordered.*