NEW YORK COUNTY.—HON. D. G. ROLLINS, SURROGATE.—June, 1882.

### SHAW v. SHAW.

*In the matter of the probate of the will of* AGNES SHAW, *deceased.*

The power of revoking wills by nuncupation neither has, nor ought to have, any wider range than that of making them in the same manner. Where a party, attacking a will on the ground of undue influence, does not, at the trial, practically question the decedent's mental capacity, though the same is technically put in issue by the pleadings, and the only evidence of such influence is declarations of decedent, tending to impeach the integrity of the will by ascribing its contents to the improper interference of others, such evidence is not admissible for any purpose.

As to whether incompetent evidence, which has been admitted in the absence of objection, may be safely disregarded by the court in arriving at its conclusions, *quære.*

The will of decedent was executed by her, with the requisite formalities, more than two years before her death, when at an advanced age, but in possession of her mental faculties, and was admitted to probate in 1881. On an application by a son of decedent, against whom the will discriminated, to revoke the probate thereof, substantially the only support to the assault on the will was the testimony of the wife of a son preferred in the will, as to parol declarations of decedent, to the effect

that she regretted having made it; that she could have peace in no other way; that her daughter Helen was cranky by spells, and would have made decedent uncomfortable if she had insisted on an equal distribution. It appeared that this witness was biased against her husband and the other supporters of the will.

*Held*, that, decedent's capacity not having been substantially questioned on the hearing, this evidence must have been rejected on objection made, and that it, at any rate, furnished no sufficient ground for revoking the decree of probate.

PETITION by Robert Shaw, a son of decedent, for revocation of the probate of her will. Opposed by Matthew Shaw and William Shaw, executors, and Helen Shaw, legatee. The facts appear sufficiently in the opinion.

A. SHILAND, Jr., *and* J. H. V. ARNOLD, *for petitioner.*

E. TERRY, *for respondents.*

THE SURROGATE.—The paper which has been admitted to probate as the last will of Mrs. Shaw was executed by her on the 6th day of March, 1878, more than two years before her death. It bequeaths to her son Robert the sum of five hundred dollars; makes equal division of her real estate among her three other children, Matthew, William and Helen, and gives to the latter the residue of the personalty. This seems to be a discrimination in favor of Helen and against Robert, though whether to a large or an inconsiderable extent does not appear by the evidence, as the value of the property is not disclosed. The will was proved in February, 1881; nearly a year thereafter, proceedings for its revocation were instituted by Robert Shaw, who filed a petition stating divers grounds upon which he contested its validity.

Only one of the grounds seems sufficiently serious to require discussion. The deceased, when she executed this

instrument, had reached an advanced age, but she had
such possession of her mental faculties as fully to qualify
her for making testamentary disposition of her estate.
There is no reason to doubt that the formalities, prescribed
by law for the execution of wills, were substantially ob-
served by herself and her witnesses; these things, indeed,
are scarcely disputed by contestant's counsel.     But it is
claimed that the will does not really speak the purpose of
the testatrix; that it is the offspring of undue influence
exerted upon her by her sons Matthew and William, and
her daughter Helen.     Nothing in the evidence tends seri-
ously to establish this fact, except the testimony of Mrs.
Margaret Shaw, wife of decedent's son Matthew.     This
lady testified to the following declarations of the testa-
trix: that she had made a will giving Robert only $500;
that she was sorry she had thus discriminated between
him and the other children, but that she was getting old
and wanted peace, and could have it under no other con-
ditions; that her daughter Helen was "cranky by spells,"
and would have made her uncomfortable, if she had
insisted upon an equal distribution of the estate.     The
same witness also stated that, on various occasions, she
had heard the brothers and sister of Robert say harsh
things about his wife, sometimes in their mother's hear-
ing; and that once William had declared with bitter
words, that he could not bear the thought of Robert and
his wife having any of the property, and that he would
strive to prevent it.

Upon the cross-examination of this witness, it appeared
that she had been the wife of Matthew Shaw for eight
years, and that her married life had been very unhappy.
Matthew had ill-treated her, she said, and driven her from

his house, claiming that she had robbed him, and she had commenced proceedings for a divorce, which were still pending. The testimony and demeanor of the witness showed that she was animated by the sentiments which such a state of things would naturally arouse in her mind. I do not, for this cause, feel at liberty to discard her testimony as wholly untrustworthy, but I accept it with some grains of allowance. And, as it furnishes substantially the sole support to the assault upon the will, I cannot, upon the faith of it, revoke the decree which has pronounced that will valid. Very little of the testimony given by this witness was competent. The court would have been bound, under the rules of evidence, to exclude the bulk of it, if objection had been made, as it ought to have been made, to its admission. For in view of the fact that the mental capacity of the decedent, though technically put in issue by the pleadings, was not practically questioned at the trial, and that, aside from her declarations, there was really no proof of the fact of undue influence, those declarations tending to impeach the integrity of her will, and to ascribe its contents to the improper interference of her children, were not admissible in evidence for any purpose. They were proved, however, without objection, and will accordingly be considered by the court, although they might, perhaps, be safely disregarded, in view of the decision in Hamilton v. N. Y. Central R. R. Co. (*51 N. Y., 106*).

In determining the legitimate force and effect of this evidence, regard may very justly be had to the grounds upon which its exclusion might have been successfully requested. The Supreme Court, many years since, se-

verely criticised evidence of this character, in the case of Jackson v. Kniffen (*2 Johns., 31*). The question was there presented for review, whether the trial court had erred in excluding certain declarations of a decedent impeaching his will. These declarations had been rejected under the following circumstances: Counsel had proposed to show that the decedent had frequently and emphatically asserted that he executed the instrument in question against his will, and through fear that a refusal would endanger his life. There was also an offer to show that, scarcely an hour before he died, the decedent, with great earnestness and solemnity, had invoked all who heard him to bear witness that he repudiated the instrument which was called his will, because it was extorted from him by menace and duress.

In sustaining the decision below, the learned Judge who pronounced the opinion of the Supreme Court says: "To permit wills to be defeated, or in any manner whatever impeached, by the parol declarations of a testator, appears to me repugnant to the very genius and spirit of the statute."

Best, C. J., in Provis v. Reed (*5 Bing., 435*), in a case similar to the present, says: "We shall not establish a doctrine which would render useless the precaution of making a will." And, in the same case, Park, J., adds: "The evidence of declarations of the testator incompatible with the validity of the will was properly rejected. It would be most mischievous, and a violation of all established principle, to allow such declarations to be received in evidence."

Similar views have since been repeatedly expressed in the courts of this country (Waterman v. Whitney, *11*

*N. Y., 157;* Neiheisel v. Toerge, *4 Redf., 332;* Cudney v. Cudney, *68 N. Y., 148;* Sisson v. Conger, *1 Thomp. & Cook, 569.* See also Griffith v. Diffenderfer, *5 Md., 480;* Hayes v. West, *37 Ind., 24;* Dickie v. Carter, *42 Ill., 388).*

The slightest reflection shows the folly and injustice of departing from this well settled doctrine. A wide door would at once be opened for those very mischiefs, whose prevention was one of the most important aims, and has been one of the most satisfactory results of our statute of wills. If a written instrument, duly signed, attested and published as a will, can be denied probate upon the mere disclosure of its maker's verbal declarations assailing its validity, the legal formalities attending the execution of such an instrument are robbed of their seriousness and significance.

The power of making nuncupative wills is now limited by law to soldiers in service and mariners at sea. The power of revoking wills by nuncupation neither has nor ought to have any wider range. Our statutes expressly prescribe the formalities by which alone, except by its actual destruction, a testator who has once made a valid will can deprive it of validity. And it would be a practical violation of the letter, as well as of the spirit of that statute, to sustain the claim of the petitioner in the case at bar.

I find, therefore, in the absence of evidence establishing that Mrs. Shaw was led by any restraint or undue influence to execute this instrument, that it is, as it purports to be, her last will and testament.

Decreed accordingly.